WHEATLAND IRRIGATION DISTRICT,
Appellant (Defendant below),

v.

TWO BAR–MULESHOE WATER COM-
PANY et al., Appellees
(Plaintiffs below).

No. 4269.

Supreme Court of Wyoming.

May 3, 1974.

William R. Jones and W. H. Vines, Jones, Jones, Vines & Hunkins, Wheatland, and Jack R. Gage, Hanes, Carmi-

chael, Johnson, Gage & Speight, P. C., Cheyenne, for appellant.

Alfred M. Pence, Pence & Millett, Laramie, for appellee Two Bar Ranch Co.

John J. Rooney, Rooney & Horiskey, Cheyenne, for all other appellees.

Before PARKER, C. J., and McEWAN and McINTYRE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

Plaintiff-appellee, Two Bar-Muleshoe Water Company, commenced this action for specific performance of an agreement to furnish irrigation water. When this matter was previously before this court in 1967 at 431 P.2d 257, the appeal was dismissed as being premature. The trial court thereupon conducted additional hearings and entered judgment from which defendant-appellant appealed.

In 1900 the Swan Land and Cattle Company, Ltd., entered into a "lease" in which Swan granted the Wyoming Development Company the right to use Swan lands as a reservoir site for the retention and storage of water to irrigate lands owned by Wyoming Development. The term of the lease was stated to be for such period of time as the demised lands should be used for such reservoir purposes. The lands so leased totaled 6,000 acres but, by agreement, in 1946 were reduced to some 3,000 acres, and constituted the site of what is now known as the Wheatland Irrigation District Reservoir No. 2. In consideration of the grant of the use of land, Wyoming Development granted Swan the right to use such quantity of water as could be carried and conveyed through two specified irrigation ditches of Swan throughout the irrigation season of each and every year, and, additionally, sufficient water to irrigate 300 acres of land to be selected by Swan.

The Two Bar-Muleshoe Water Company has succeeded to the rights and obligations of the Swan Land and Cattle Company, Ltd. The individual parties-plaintiff, William H. Beisner, Bernard R. McGuire, Arthur Burnett, Ellen Marie Burnett, Dora Burnett, and Two Bar Ranch Company, are the owners of all the stock of plaintiff corporation and are now the owners of certain lands which, at the time of the execution of the "lease" in 1900, were owned by Swan. The Wheatland Irrigation District has succeeded to the rights and obligations of the Wyoming Development Company under the said "lease."

The two ditches specified in the "lease" were identified as the Mule Shoe Ditch and the Two Bar Ditch. The size of the Mule Shoe Ditch was stated to be 7 feet in width at the waterline, carrying 1½ feet of water in depth, and having a grade of 9 feet to each mile in length. The Two Bar Ditch was described as being 6 feet in width at the waterline, carrying 2 feet of water in depth, and having a fall or grade of 7 feet to each mile in length. The "lease" agreement provided that the quantity of water to be furnished should be that which said ditches could carry with their stated dimensions.

When the matter was before this court previously we recognized that plaintiffs had the burden to establish the quantity of water the parties intended, and we suggested it should be expressed in terms consistent with current measurements, e. g., cubic feet per second, so that enforcement of any decree could be determinative rather than cause for added misunderstanding. All the dimensions necessary to determine the cross-sectional area were not given in the lease, and in order for plaintiffs to prevail it was therefore necessary for them to establish by proof the bottom width and side slope of the ditches at the time of the agreement.

*Two Bar Ditch*

■ We think counsel for the parties under the Two Bar Ditch put the issue very succinctly when, upon direct examination of an engineer expert witness, he asked:

"Do you understand the thing we are trying to determine here is cubic feet per second carrying capacity of the Two

Bar ditch as it was originally constructed? Do you understand that to be the problem we are trying to resolve?"

The witness, John Schrunk, was a Consulting Engineer with a degree in Engineering and a Master's Degree in Agricultural Engineering. Since 1940 he had been engaged in some phase of agricultural engineering. His varied studies of irrigation works throughout the world were helpful to him in visualizing the design and pattern of construction of ditches in the 1900s. He testified that in his opinion the ditch in 1900 had a bottom width of 4 feet, which, when equated with the 6-foot width at the waterline and a water depth of 2 feet, as set forth in the lease, would give a ½ to 1 side slope. From these figures he was able to determine the cross-sectional area. Upon applying his estimated coefficient of friction and the 7-foot-to-the-mile fall or grade to the cross-sectional area he voiced his opinion that the Two Bar Ditch in 1900 had a carrying capacity of 26.8 c. f. s. There was therefore sufficient credible evidence to support the trial court's finding that the carrying capacity of the Two Bar Ditch at the time of the lease was 26 c. f. s.

### Mule Shoe Ditch

 The trial court determined that the carrying capacity of the Mule Shoe Ditch in 1900 was 25 c. f. s. This was apparently based upon testimony that while the average carrying capacity of the ditch was 27.5 c. f. s., there was a pipe in the ditch which restricted its capacity to 25 c. f. s. While there was no testimony or evidence as to the size of this ditch in 1900, the trial court concluded that there had been no material change since 1900 in the size or carrying capacity of the Mule Shoe Ditch, and we think there was sufficient evidence to support the conclusion. Therefore, if there was sufficient showing as to the present carrying capacity of the Mule Shoe Ditch, the carrying capacity of the ditch in 1900 would have been established. Plaintiffs' witness Kennedy, a Civil Engineer and Land Surveyor, testified that he

" * * * tried to find what [he] thought would be the average cross section of the ditch," and by applying fall and friction factor he determined the capacity to be 27.5 c. f. s. However, upon cross and further direct examination he stated the 27.5 c. f. s. figure was an average carrying capacity of the ditch and in places which he examined there was a tremendous variance in the capacity, e. g., as much as 10 second feet. It is elementary that a ditch will carry only that quantity of water that will pass the point of least capacity. Therefore, the most that this testimony would support would be the conclusion that the Mule Shoe Ditch in its present size will carry 17.5 c. f. s. of water (27 minus 10 = 17.5), ergo, the capacity of the ditch in 1900 was 17.5 c. f. s. The findings of fact, conclusions of law, and judgment must therefore be modified so that the capacity of the Mule Shoe Ditch at the time of the lease in 1900 is determined to be 17.5 c. f. s., which was the quantity of water the parties intended at the time of the lease.

### Irrigation Season

 The "lease" provided that plaintiffs were to receive water " * * * throughout the irrigation season of each and every year * * *." The trial court found the term "irrigation season" meant that period of time during each growing season in which water was needed for beneficial use of the type of crops grown by the individual plaintiffs, whether or not such irrigation season coincided with that of the defendant for the type of crops grown by its members, and the defendant was obligated to furnish water on demand during the period of plaintiffs' irrigation season. The defendant objected to this finding because in its opinion it could result in waste of water, and the plaintiffs might demand water for varied periods of time in a given year depending upon the types of crops grown by them. The defendant's concern about the impossibility of compliance with plaintiffs' demand for water is not well-founded because a party is not compelled to do that which is impossible, and reason

in all matters must prevail. Its anxiety that it would be required to deliver more water than the plaintiffs can use for beneficial purposes is dispelled by the trial court's finding that the demands of the plaintiffs are subject to the requirement that the water be put to beneficial use without unnecessary or intentional waste. The amount of water and the time it is to be furnished are also limited by the court's finding that any time the natural flow of Sybille Creek is not sufficient to furnish the amount of water as demanded for the Mule Shoe and Two Bar Ditches, defendant is obligated to furnish the difference from water stored and held in its Reservoir No. 2. The trial court's findings as to the irrigation season are a reasonable and supported interpretation of the contract provisions.

### Plaintiffs' Lands to be Irrigated

■ The "lease" agreement provided that Wyoming Development would furnish water for the irrigation of lands owned by Swan and lying under and capable of being irrigated from certain ditches. The trial court found that the Two Bar-Muleshoe Water Company was entitled to receive water through the Mule Shoe and Two Bar Ditches for the irrigation of the individual plaintiff's lands lying under and capable of being irrigated therefrom. The defendant contended the lands to be irrigated were limited to those for which the plaintiffs had received secondary adjudicated rights and for which stock certificates were issued in the Two Bar-Muleshoe Water Company.

On January 27, 1947, the Two Bar-Muleshoe Water Company Certificate of Incorporation was executed. The stated purpose of this Wyoming nonprofit corporation was to acquire, own, and control the area of land lying under and used for defendant's Wheatland Reservoir No. 2, which was the land originally leased by Swan to Wyoming Development in 1900, and membership in the corporation was based solely on the ownership or control of

lands lying under the ditches having the right to receive water from Wheatland Reservoir No. 2 under the terms of the 1900 lease between Swan and Wyoming Development. Membership was to be proportionate to each member's irrigable lands lying under the ditches and entitled to receive water, with one share issued for each irrigable acre. Stock was accordingly issued in the Two Bar-Muleshoe Water Company, and the present stockholders constitute the individual parties-plaintiff. The Certificates of Membership were also to represent a proportionate interest in the lands owned by the corporation and used for Wheatland Reservoir No. 2.

On January 30, 1947, the Swan Company assigned, sold, transferred, and conveyed to the Two Bar-Muleshoe Water Company all its right, title and interest in the 1900 lease to Wyoming Development. It also appears that by such "assignment" Swan sold and conveyed to the water company the lands covered by the lease. In any event, so far as the record discloses plaintiff-Two Bar-Muleshoe Water Company had succeeded to whatever rights Swan had under the lease with Wyoming Development, which is now replaced by defendant-Wheatland Irrigation District.

On March 14, 1947, a document entitled "Application for Membership in Two Bar-Muleshoe Water Company" was executed by the then owners of all the former Swan lands which were designated in the 1900 lease as being " * * * lands owned by said party of the first part [Swan], its successors or assigns, lying under said ditches and capable of being irrigated therefrom." The application showed that 1,597 shares were to be issued to five parties. It further provided:

"4. The records of the corporation, as well as the Certificates of Membership, when issued, shall contain a description of the lands to be irrigated, as described in said Exhibit 'A', and to which the rights hereunder shall be appurtenant, and no right to use water under the terms of this agreement and the Certifi-

cate of membership shall be detached, in whole or in part, from the lands for which originally acquired and attached to other lands unless and until said proposed transfer shall first have been submitted to and approved by the Board of Directors the old certificate cancelled, and a new certificate or certificates of membership issued showing the description of the acreage upon which the water shall thereafter be applied. The approval of the Board shall not be arbitrarily denied but may be withheld only if injury to other members of the corporation will result by reason of such transfer."

It thus appears that the parties owning the former Swan lands agreed as to the number of acres "lying under said ditches and capable of being irrigated therefrom," as specified in the 1900 lease. This established the acreage lying under the ditches.

Certificates of Appropriation of Water were issued by the State. Board of Control for the same 1,597 acres of land as described in the Application for Membership in the Two Bar-Muleshoe Water Company. Four Certificates for a total of 946 acres were issued to the Two Bar Ranch Company's predecessor, certified as being recorded in Certificate Record # 61 at pages 24, 26, 137, and 138. A Certificate containing 70 described acres was issued to plaintiff-Burnett's predecessor and recorded in Certificate Record # 61 at page 25. Plaintiff-McGuire's predecessors were issued a Certificate recorded in Certificate Record # 61 at page 21 for described lands totaling 270 acres. Plaintiff-Beisner and his predecessors were named as appropriators in two Certificates appearing at Certificate Record # 61 at pages 22 and 23, which described a total of 311 acres of land.

Each of the said Certificates showed that the Board had established the appropriation date of the right of storage in Wyoming Development Company's No. 2 Reservoir to be January 29, 1898, and the amount of appropriation to be a secondary supply for the lands described.

A total of 1,297 of the 1,597 acres shown on the aforesaid Certificates also have direct flow rights from Sybille Creek. The "lease" granted additional water for the irrigation of 300 acres to be selected by Swan. Apparently the plaintiffs have elected the 300 acres and they are included in the aforesaid Certificates of Appropriation. It is therefore clear that the parties-plaintiff have established 1,597 as the total number of acres lying under said ditches and capable of being irrigated therefrom. The judgment of the district court must therefore be modified so the total acres of land which the plaintiffs are entitled to irrigate under the Two Bar and Mule Shoe Ditches and the additional 300 acres as provided in the lease shall be 1,597 acres.

The findings of fact, conclusions of law, and judgment of the trial court is hereby modified as hereinabove set forth, and in all other respects affirmed.

GUTHRIE and McCLINTOCK, JJ., took no part in the consideration or decision of the case.

PARKER, Chief Justice (concurring in part and dissenting in part).

I would affirm the portion of the judgment holding that the quantity of water which plaintiffs are entitled to receive through the Mule Shoe Ditch is 25 cubic feet per second. A careful review of the evidence in the light most favorable to appellees demonstrates the soundness of the trial court's finding that the "carrying capacity of the Mule Shoe Ditch with its dimensions at the time of the 'Lease from The Swan Land and Cattle Company to Wyoming Development Company' March 1, 1900, was 25 cubic feet per second, and this was the quantity of water the parties intended in that 'Lease.'"

With that exception, I concur in the opinion.