IRENE ROTH *et al.*, Plaintiffs-Appellants, *v.* MELVIN ROTH *et al.*, Defendants-Appellees.

Third District   No. 79-514

Opinion filed May 29, 1980.—Rehearing denied June 23, 1980.

Jay H. Janssen, of Peoria, for appellants.

Michael A. Fleming, of Sours, Newell & Nicol, of Peoria, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This interlocutory appeal has been allowed to review an order of the Circuit Court of Peoria County denying a motion to disqualify defendant Melvin Roth's attorney on the ground of conflict of interest. The facts of this cause are not disputed.

The estate of decedent Edwin Roth has spawned extensive litigation involving his son Melvin Roth, a co-executor, and the three Roth sisters, Irene Roth, Alice Roth, and Frances Miller. The present suit involves a claim by the Roth sisters, plaintiffs, that defendant Melvin Roth has failed to make proper accountings of income and expenses from the farm operations over a period of several years. During the period of January to

September 1973, in the estate proceedings in Tazewell County, plaintiffs were represented by Brent Gwillim of the Peoria law firm of Heyl, Royster, Voelker, and Allen. Plaintiffs paid attorneys' fees of $1,922 for services rendered by the Heyl firm. In 1973, James Lewis first was an associate in the Heyl firm, and then on October 1, 1973, he became a partner in the firm. In 1977 Lewis left the Heyl firm and joined the firm of Sutkowski & Washkuhn. Attorney Washkuhn was at that time representing defendant. Apparently Lewis was assigned to work on the Roth case, and later, when he left the Sutkowski firm, he continued as counsel for defendant.

Although the record on appeal is not totally clear, it seems that David Radley of the firm of Baymiller, Christison & Radley represented plaintiffs for a time and then was succeeded by Timothy Swain, who filed a motion requesting the disqualification of Lewis on the basis of a conflict of interest. Swain withdrew after he discovered a conflict affecting his representation. About two months before the date set for trial, Attorney Jay H. Janssen entered his appearance and pursued the motion to disqualify Lewis.

At the hearing on the motion, Lewis testified that he first learned that the Heyl firm had previously been connected with this case in a conversation with David Radley on April 12 or 13, 1979, at which time Radley told him about the motion Swain was filing. Radley also remarked that he could have had Lewis disqualified two years previously, and yet chose not to raise the issue but apparently hold the motion for a more opportune time. Lewis testified further that the Heyl firm was strictly compartmentalized. While there, he worked solely in insurance defense litigation and had no knowledge of the Roth case or other noninsurance litigation. He admitted that at some later time he did learn that the Heyl firm had represented plaintiffs in the Tazewell County probate proceeding, but he thought that was a matter separate from the current litigation.

The trial court found that Lewis had no actual knowledge of the Heyl firm's prior representation of plaintiffs, and therefore that there was no actual conflict of interest, merely an apparent conflict. This finding is significant in view of the recent Illinois Supreme Court case of *People v. Franklin* (1979), 75 Ill. 2d 173, 178-79, 387 N.E.2d 685, 687, where the court said:

> "In the case before us, defense counsel, while he was employed by the State's Attorney's office, was not involved in defendant's case. Although he had, 4½ years earlier, prosecuted and convicted defendant on a prior burglary charge, *he had no recollection thereof during the trial.* Obviously, the 'subliminal effects' referred to in *Stoval* (40 Ill. 2d 109, 113) and 'subtle influences' suggested in

*Kester* (66 Ill. 2d 162, 163) need not concern us here for those factors *require an awareness*, not present here, of the facts creating them." (Emphasis added.)

The trial court also noted that Lewis and his client have invested two years of time and effort in preparing this very complicated case for trial, while plaintiffs have, until now, failed to call to anyone's attention the possible conflict of interest. The court ruled that the conflict was waived and denied the motion to compel disqualification. This interlocutory appeal followed, with the trial court certifying the following question of law for review:

"Does a conflict of interest exist when the attorney who now represents the defendant was an associate in the law firm which formerly represented the plaintiffs concerning the same subject matter and same parties?"

Plaintiffs contend Lewis must be disqualified from undertaking litigation against a former client concerning a substantially related subject matter because of the ethical requirements that a lawyer should preserve the confidences and secrets of a client (Canon 4 of the Code of Professional Responsibility) and that a lawyer should avoid even the appearance of professional impropriety (Canon 9). Plaintiffs rely upon the principle that the knowledge and confidences reposed with one member of the law firm are imputed to his partners. (*Schloetter v. Railoc of Indiana, Inc.* (7th Cir. 1976), 546 F.2d 706.) In Illinois State Bar Association Professional Ethics Opinion No. 328, attorney X left firm A and joined firm B. Both firms agreed that firm B would withdraw from those cases in which X had participated while a member of firm A, but a question arose whether firm B could participate in cases in which X did not participate and of which he had no knowledge. The opinion concluded that other members of firm B could participate, but as to X himself the opinion stated:

"Even in cases in which Lawyer X had no knowledge, doubtless the client reposed confidence in some other member of Firm A, and as a general rule a lawyer may not do that which any partner of his would be prohibited from doing. Even though Lawyer X had no knowledge whatever as to a given case, if he should later participate in that same case on the opposite side, there would be the appearance of a possible conflict of interest or possible violation of confidence, and this appearance should be avoided: ABA Informal Opinion No. 885 (November 2, 1965)."

Plaintiffs also refer to the case of *Westinghouse Electric Corp. v. Kerr-McGee Corp.* (7th Cir. 1978), 580 F.2d 1311, where the Chicago office of the large Kirkland law firm had 8 to 14 of its 130 lawyers working

for Westinghouse while 6 of the 40 lawyers in its Washington, D.C., office were representing the American Petroleum Institute, of which the defendant oil companies were members, at the same time in a related matter. The Kirkland firm argued that it had constructed a "Chinese Wall" between the two groups of attorneys so that neither group had actual knowledge of what the other was doing. The court rejected the "Chinese Wall" theory and preserved without modification the presumption that actual knowledge of one lawyer in a firm is imputed to each of the other members of that firm. The court applied a balancing test as follows:

> "The fact that the two contrary undertakings by Kirkland occurred contemporaneously, with each involving substantial stakes and substantially related to the other, outbalances the client's interest in continuing with its chosen attorney." (580 F.2d 1311, 1322.)

Plaintiffs reason that the rationale of the *Westinghouse* case should be applied here to render meaningless Lewis' claim that the Heyl firm was strictly compartmentalized.

■■ We agree that the "Chinese Wall" theory is not dispositive of this case, but we hesitate to rely solely upon Federal cases to establish Lewis' disqualification since those cases reflect the fact that the ABA Code of Professional Responsibility is regarded as binding upon attorneys at the Federal bar. In Illinois, it has been held that the Illinois Code of Professional Responsibility is not binding in the court. (*In re Taylor* (1977), 66 Ill. 2d 567, 363 N.E.2d 845.) However, an attorney may be subject to disciplinary proceedings for failing to observe the canons of ethics. (*In re Krasner* (1965), 32 Ill. 2d 121, 204 N.E.2d 10.) The Illinois view was stated quite clearly in *People ex rel. Carey v. Lincoln Towing Service Inc.* (1976), 40 Ill. App. 3d 126, 131, 351 N.E.2d 342, 347, where the court said:

> "*Ordinarily*, we think it clear that we have no authority to interfere with the right of a private person to retain the private attorney of his choice as his appellate counsel. Nor do we have any duty to *prevent* a private attorney from accepting professional employment simply because he might thereby create a conflict of interest for himself, unless the potential conflict of interest would adversely affect the administration of justice * * *."

We note that the most recent Illinois Supreme Court case (*People v. Miller* (1980), 79 Ill. 2d 454, 461, 404 N.E.2d 199, 202), although criminal in nature, has stated:

> "[B]eginning with *Robinson* [(1980), 79 Ill. 2d 147, 402 N.E.2d 157], we have rejected the notion that a public defender's office is to be treated as a law firm or an 'entity' in considering a conflict of

interest claim; the disqualification of one assistant public defender due to a conflict of interest will not necessarily disqualify all members of the public defender's office."

■ After giving due consideration to defendant's right to counsel of his choice and to the other circumstances of this case, we believe the trial court acted astutely and did not err in refusing to disqualify Lewis. There are two reasons for our conclusion.

First, applying a balancing test similar to that utilized in the *Westinghouse* case, we think that defendant's interest in continuing with his chosen attorney, who has spent two years preparing a complex defense for trial, far outweighs any adverse effect to the administration of justice that would flow from defendant's representation of an interest adverse to that represented by his former firm six years ago, where no *actual* conflict of interest arises. Defendant would be seriously prejudiced were he forced to find new counsel now. Although we see no error in refusing to disqualify Lewis, it should be noted that we do not pass upon the question whether disciplinary action would be appropriate. We recognize a lawyer's conduct should be free from the appearance of impropriety, as well as impropriety itself.

Second, even if we could not say that defendant's rights outbalance the ethical considerations, we believe the trial court should be affirmed on the ground that plaintiffs waived their right to object by failing to call to defendant's attention the appearance of a conflict which was known to them, particularly where there is no showing of actual prejudice to plaintiffs.

Instructive on this point is the case of *Lau v. Valu-Bilt Homes, Ltd.* (1978), 59 Haw. 283, 582 P.2d 195, where one member of a joint venture brought an action for contribution against his fellow joint venturers, and in doing so was represented by an attorney who had previously represented both plaintiff and defendants for a short time in a related matter. The trial court denied defendants' motion to disqualify plaintiff's counsel. In affirming that order, the Supreme Court of Hawaii found that both defendants and their counsel had known of the apparent conflict from the time suit was commenced but had not filed a motion to disqualify plaintiff's attorney until more than one year after the complaint was filed and less than 48 hours before trial. The supreme court also found that there was no evidence the attorney had received any confidential information from defendants during the time he represented them. The court acknowledged the general rules forbidding counsel from representing interests adverse to a former client but went on to say:

"However, in the absence of evidence of actual prejudice, one, who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly

refrains from asserting it promptly in order to reserve it for the most expedient time, may be deemed to have waived that right." 59 Haw. 283, 297, 582 P.2d 195, 204. Accord, *Redd v. Shell Oil Co.* (10th Cir. 1975), 518 F.2d 311.

The same considerations apply to the case before us. Plaintiffs admittedly knew of the possible conflict of interest for two years before they asserted it. The attempt to disqualify Lewis shortly before trial would greatly prejudice the defense solely for the sake of appearances since it is not denied that Lewis had no actual knowledge of or advantage from his former firm's representation of plaintiffs. We believe by waiting two years, plaintiffs waived their right to object.

Accordingly, the order of the trial court denying the motion to disqualify Lewis is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.