Pat BOWEN, Bernard Raymond McGuire, Sr., Irrevocable Trust, Bernard Raymond McGuire, Jr., and Thomas Michael McGuire, Trustees, and Burnett Ranches, A Wyoming Partnership, Appellants (Plaintiffs),

v.

Thomas S. SMITH, John E. Stanfield and Smith, Stanfield and Scott, A Partnership composed of Thomas S. Smith, John E. Stanfield and John B. Scott, Appellees (Defendants).

No. 91–152.

Supreme Court of Wyoming.

Aug. 28, 1992.

Frank J. Jones, Wheatland, for appellants.

J. Patrick Hand, Douglas, and John B. Speight of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for appellees.

Before THOMAS, CARDINE, URBIGKIT* and GOLDEN, JJ., and BROWN, J. (Retired).

URBIGKIT, Justice.

This appeal, in current course of events, presents the third lawsuit in what is now generally designed to be a legal malpractice action. Appellants, as minority shareholders, sued Smith, Stanfield and Scott—the attorneys who represented the majority shareholder and parent corporation after rights against a third party were resolved

* Chief Justice at time of oral argument.

by a favorable cash settlement, and the shareholders could not then agree on a division of the settlement proceeds. That disagreement was litigated through appeal, *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292 (Wyo.1991), with the minority shareholders achieving complete success. During this period of time, the minority shareholders' growing dissatisfaction was manifested by the filing of this lawsuit against the law firm which had secured the settlement in the first of the three proceedings, with the law firm losing the division litigation in the second lawsuit. This third litigative campaign ends in summary judgment favoring the targeted law firm. That conclusion is hereby affirmed.

A melange if not avalanche of charges and counter charges, including sufficiency of the appeal itself, are developed from this record accurately described by a litigant to total not less than fifty pounds of paper.

The superintending issue presented is propriety of the trial court's entry of summary judgment in favor of the law firm or, conversely, existence of material issues of fact precluding that resolution. *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986).

## I. ISSUES

The game players require identification before the substance of the contended issues is meaningful. In actuality, the present three lawsuits are only a continuation of a course of prior litigation which has been actively pursued since well before 1944. Those cases include, in more specific detail than needs to be related here, the identification of a longstanding course of action and reaction. *Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318 (1944); *Wheatland Irr. Dist. v. Two Bar–Muleshoe Water Co.*, 431 P.2d 257 (Wyo.1967); *Wheatland Irrigation Dist. v. Two Bar–Muleshoe Water Co.*, 521 P.2d 1334 (Wyo.1974); *State ex rel. Squaw Mountain Cattle Co. v. Wheatland Irr. Dist.*, 728 P.2d 172 (Wyo.1986); and, finally, *Squaw Mountain Cattle Co.*, 804 P.2d 1292.

Wheatland Irrigation District (Wheatland Irrigation) is a user owned cooperative irrigation system with large farming acreage under cultivation in Platte County, Wyoming and storage facilities located in Albany County, Wyoming. The initiation of all proceedings came with Wheatland Irrigation's effort to acquire water rights and storage capacity. The predecessor in land ownership to Two Bar–Muleshoe Water Company (Swan Land and Cattle Company, Ltd.) was a target of the acquisition activities. In more recent times, Two Bar–Muleshoe Water was owned by a majority shareholder and an associative group of individuals as minority shareholders. The "majority shareholder" was Squaw Mountain Cattle Company (Squaw Mountain), essentially owned and managed by Springer Jones and his family. The Bowen–McGuire group are the "minority shareholders."

Springer Jones, an Albany County rancher, on behalf of Squaw Mountain employed the Laramie, Wyoming law firm of Smith, Stanfield and Scott (law firm) to further litigatively challenge Wheatland Irrigation for contended breach of contractual rights resulting from earlier courses of litigation. It was determined that the essential cause of action was held by Two Bar–Muleshoe Water as the corporation. By agreement of all shareholders, the law firm employed by Springer Jones undertook in the name of the parent entity, at the sole expense of the majority shareholder, to seek redress against Wheatland Irrigation. After an arduous effort totaling six years in litigative pursuit, a satisfactory and even very successful recovery was obtained by settlement after an intermediate first appeal, *State ex rel. Squaw Mountain Cattle Co.*, 728 P.2d 172, in 1988. The majority and minority shareholders came to a serious dispute through another lawsuit about division of proceeds. That suit ultimately resulted in final decision by this court on a pro-rated shareholder basis for division. *Squaw Mountain Cattle Co.*, 804 P.2d 1292. The minority shareholders, while the division litigation was still ongoing, then sued the law firm in a third lawsuit. It is that lawsuit which now comes to this court following entry of summary judgment by

188

the trial court. Appellants (minority share-holders) state their issues:

A. Are there genuine issues of material fact which preclude the granting of Summary Judgment?

B. Are Plaintiffs' claims barred by the doctrine of res judicata?

C. Are Plaintiffs' claims barred by the doctrines of estoppel and waiver?

D. Are attorney's fees incurred in an action which was necessitated by the wrongful acts and conduct of Defendants recoverable as damages?

Appellees (law firm), injected with considerable emotion, restate the issues:

A. Is the Appellants' (hereafter "Non–Clients") appeal subject to dismissal and denial for failure to comply with the Wyoming Rules of Appellate Procedure?

B. Did an Attorney–Client relationship exist between the Non–Clients and the Attorneys?

C. If an Attorney–Client relationship existed between Non–Clients and the Attorneys, was a duty created; was that duty breached; was the alleged breach "the cause" of the Non–Clients['] damages; were the Non–Clients damaged at all; or, are the damages they now seek to recover the direct and proximate cause of the actions of their President, Springer Jones; the majority stockholder of Two Bar, (Squaw), all of which were previously resolved in *Squaw Mountain v. Bowen*, (804 P.2d 1292, Wyo.1991) (hereafter "the Grant case"); or, simply the attorney's fees and costs which every litigant must bear in resolving disputes through litigation?

D. Under the pronounced Rules of the Wyoming Supreme Court, was Summary Judgment in this case not only proper, but required.

## II. SUMMARY OF DECISION

This court affirms the trial court in lacking a desire to send the laundry out to wash one more time than is necessary. We agree with the trial court's decision by our determination that a claim was not stated. We find the law firm was not representing the minority shareholders and violated no fiduciary relationship to them in continuing to represent the initial client after the disagreement about division of settlement proceeds developed.[1] Settlement with Wheatland Irrigation ended both representation of the parent corporation and assertable responsibility for either it or the minority shareholders during the continued course of this present litigative odyssey.

Despite the high level of acrimony and histrionics documented for this appeal, we concur with the trial court's decision on the dispositive issue presented that there was no material conflict in evidence precluding summary judgment for a legal issue resolution of the minority shareholders' claims. The parent corporation was faithfully and fully represented by the law firm through the Wheatland Irrigation litigation, and to a very successful settlement. The dispute thereafter was either a new ball game or a different inning where, lacking agreement, the parties litigated and the courts resolved.

## III. FACTS SIGNIFICANT FOR THIS DECISION

As casually recognized earlier, disputes between Two Bar–Muleshoe Water and

1. The eight page, fifty-one paragraph complaint filed by the minority shareholders against the law firm premised liability on an attorney/client relationship. It stated separate claims for breach of fiduciary duty; conspiracy; breach of contract; fraud; malpractice; and punitive damages. The complaint does not clearly delineate items of claimed damage except obviously attorney's fees incurred in the division litigation and attorney's fees now incurred in this third lawsuit. An answer was filed to the complaint on August 20, 1990 and, on the same day, an amended complaint was filed. No easily apparent difference except a designation of the particular attorney rather than the law firm for certain claimed misconduct is demonstrable within the terms of the extended complaint and amended complaint.

This present lawsuit was filed July 31, 1990. The final decision of this court determining shareholder division of proceeds in affirming the trial court would not come until February 6, 1991, more than six months later. Obviously, this lawsuit was not instituted in reliance on what the Wyoming Supreme Court might do in *Squaw Mountain Cattle Co.*, 804 P.2d 1292.

Wheatland Irrigation had a long and almost intractable Wyoming litigative history. The history goes back to about May 15, 1883 when the predecessor to Wheatland Irrigation commenced its development of the Platte County project and continued through a 1912 water rights adjudication. *See Anderson,* 154 P.2d 318. This court's determinations in earlier litigation involving the Albany County storage project had not ended water supply disputes. In 1983 or thereabouts, Springer Jones as the principal in Squaw Mountain, the majority shareholder in Two Bar–Muleshoe Water as the parent corporation, decided to try again by litigation against Wheatland Irrigation to re-establish rights of water and compensation.

In that process, the present law firm was employed by Squaw Mountain. That law firm, one of the more experienced trial firms in Wyoming, was asked to take on a further chapter in this major Two Bar–Muleshoe Water effort in behalf of the majority shareholder. The record is clear that the minority shareholders in Squaw Mountain were advised and concurred in the continued effort provided that the majority shareholder remain totally obligated to (and did) compensate the law firm for fees and expenses incurred.

After an active course of litigation, which is the history of Wheatland Irrigation, a settlement was achieved calling for payment of $1,250,000 by Wheatland Irrigation to the parent corporation. The record may be in some dispute as to exactly what advice was furnished to the minority shareholders, but there is no dispute that some of the minority shareholders were also members of the Wheatland Irrigation District. In any event, the settlement was completely acceptable. Unfortunately, the majority shareholder desired in large part the fruits of its litigative victory and the minority shareholders (appellants) strongly disagreed with any such division.

Consequently, the fifth lawsuit, second in this sequence, developed. *Squaw Mountain Cattle Co.,* 804 P.2d 1292. A decision followed within the trial court which substantially favored the minority shareholders. The trial court gave them a pro-rated interest in the settlement for their forty-one percent shareholder interest with the majority shareholder, Squaw Mountain, to receive fifty-nine percent of the cash settlement. No consideration was given Squaw Mountain for its six year litigative expenditures. The recovery by the minority shareholders totalled $407,600, for which in achievement they had expended little effort and no litigative costs. The trade off, if that term is appropriate in conceptualization, is that the minority shareholders, although demanded in the division litigation prayer, were awarded neither attorney's fees nor punitive damages against either the majority shareholder or its principal, Springer Jones.[2] With the division judicially completed through trial court and pending appeal, the minority shareholders then filed this lawsuit against the law firm which had represented the corporation in receiving the recovery.

## IV. RESOLUTION

■ With the charges and counter charges proliferating within this appellate record, this court will now resolve this appeal on one simple issue. The representation of the parent corporation, Two Bar–Muleshoe Water, by attorneys employed in the interest of the majority shareholder, did not create an attorney/client relationship with the minority shareholders in the same corporation. Obviously, no breach of attorney/client relationship was manifested or is contended about their representation of the corporation, but only that the majority shareholder, as their additional or original client, desired a greater portion of the division of proceeds than was acceptable to the minority shareholders. The issue of attorney's fees awardable in the division litigation was resolved in that proceeding

---

2. In the earlier case, *State ex rel. Squaw Mountain Cattle Co.,* 728 P.2d at 179, this writer in special concurrence recognized the apparent unstoppable nature of the exhaustive litigation and observed that "[h]ope springs eternal." Unfortunately, now two lawsuits later, we may not have yet reached that ephemeral conclusion.

through denial by the trial court and affirmation of the result on appeal. *Squaw Mountain Cattle Co.*, 804 P.2d at 1297–98.

Consequently, if the essence of this lawsuit is recovery of attorney's fees incurred by the minority shareholders in the division litigation, recovery is now precluded from either the majority shareholder or Springer Jones, who served as president of both Squaw Mountain and Two Bar–Muleshoe Water. With a perceived understanding of that preclusion, appellants create the anomaly now presented by undertaking to sue the law firm after recovery from the law firm's primary client was denied. We are called to recognize with regret, sadly here but fortunately not pervasive in Wyoming, that a counterpoint to effective advocacy, usually always ineffective, is in itself to sue or attack the attorney for the opposing litigant. This court has spoken on this subject in one context, *Spence v. Flynt*, 816 P.2d 771 (Wyo.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 388 (1992); *cf. Brooks v. Zebre*, 792 P.2d 196, 202 (Wyo.1990) (majority and dissent).

### A. *Prior Litigation*

We decide this case on the simple concepts of corporate law. The law firm never purported to represent the minority shareholders who clearly had independent representation at any and all material times during the Wheatland Irrigation claim litigation. Consequently, a legal malpractice claim is not properly stated. Whatever duty the law firm owed to the corporation as well as the employing agency, the majority shareholder, was discharged by the favorable resolution of the legal responsibility for which they were employed by the settlement with Wheatland Irrigation.

One vice of the appellants' overall philosophic effort in present litigation is rejection of any legitimacy in the Squaw Mountain proceeds division controversy. Unsuccessful certainly, but the contention was surely subject to reasonable moral and legal legitimacy, Springer Jones had a realistic although unacceptable concept of why he should be granted the majority benefit after he had funded the entire cost of collection and had probably sustained much of the loss for which the settlement was achieved.

The sequence of events distilled for this opinion are significant. During the summer of 1988, negotiations were underway between Wheatland Irrigation and the law firm to settle the then five-year-old lawsuit originally started in 1983. Considerable argument is presented about conversations and communications between the lawyers for the majority shareholder and the lawyers for the minority shareholders, or the minority shareholders themselves, regarding the status of negotiations; but, unquestionably, the second offer including cash of $1,250,000 was presented, considered, and then held in abeyance for another reconvened shareholders' meeting. That meeting was held and the settlement was approved by the board of directors of the corporation and the majority shareholder. The minority shareholders then objected to the proposed division of this prize resulting from the long continued litigation.

On September 27, 1988, the minority shareholders filed suit which ultimately ended in this court's decision in *Squaw Mountain Cattle Co.*, 804 P.2d 1292 on February 6, 1991. The division lawsuit involved an original and two amended complaints. In original complaint, John Does One through Four were included as defendants and the complaint itself did not include any substantive text regarding who they may be or what their claimed participation as a basis for a liability was claimed. The first amended complaint recognized a required change in the status of the plaintiffs and added Donna Jones, Springer Jones' wife, as a defendant alleging her material involvement. The second amendment recognized final settlement with Wheatland Irrigation and the stipulation for deposit that had been made.

In paragraph eleven of the first amended complaint and paragraph ten of the second amended complaint, defendants John Does One through Three were recognized:

Defendants, John Does One through Three, are all individuals or entities, whose identities or involvement in this

matter are not presently known to the Plaintiff; however, upon determination of their names and their involvement with the subject matter of this litigation, this Complaint will be properly amended. Defendants, John Doe One through Three, may have actively and materially participated with the Defendants, Squaw Mountain and Springer Jones, in carrying out the acts alleged herein[.]

The second amended complaint, filed about six months after the initiation of that litigation, did not provide any change regarding the designation or identification of John Does One through Three. The second amended complaint did claim exemplary and punitive damages from Springer Jones, Donna Jones, Squaw Mountain, and John Does One through Three. Obviously, no judgment was entered against the John Does since their identification was neither alleged nor proved during the continued course of that litigation up until the date that a final judgment was entered by the trial court. The second amended complaint predated the filing of the present lawsuit by a further period of about fifteen months (April 6, 1989 to July 31, 1990) in which the law firm finally became the actual specified defendants.

### B. *Challenge to the Law Firm of a Conflict of Interest*

Between September 27, 1988 and July 31, 1990 when this lawsuit was instituted, one thing did happen and one did not. The minority shareholders specifically agreed with Wheatland Irrigation and with the majority shareholder for the establishment of an escrow to retain their claimed share of proceeds. Counsel for the litigants stipulated that the settlement should be completed and proceeds paid. That stipulation provided:

STATE OF WYOMING
 SS
COUNTY OF ALBANY
IN THE DISTRICT COURT
EIGHTH JUDICIAL DISTRICT
Civil Action No. 18–446
PAT BOWEN, BERNARD RAYMOND MCGUIRE SR., IRREVOCABLE TRUST, BERNARD RAYMOND MACGUIRE, JR., and THOMAS MICHAEL MCGUIRE TRUSTEES and BURNETT RANCHES, a Wyoming Partnership, acting by and through TWO BAR–MULESHOE WATER COMPANY, a Wyoming Corporation, Plaintiffs,
–vs–
SQUAW MOUNTAIN CATTLE COMPANY
a Wyoming Corporation, SPRINGER JONES,
DONNA JONES, WHEATLAND IRRIGATION DISTRICT
and JOHN DOES ONE through THREE, Defendants

### STIPULATION

It is hereby stipulated and agreed to by and between the undersigned counsel of record, with respect to the proceeds payable to Squaw Mountain Cattle Company and others by virtue of the settlement agreement between Wheatland Irrigation District and Two Bar–Muleshoe Water Company, and others, executed in full on January 3, 1989, as follows:

1. It is acknowledged that the settlement agreement provides for the payment of the sum of $1,250,000 which under the terms of the agreement was to be paid out as follows:

(a) $82,500 to Squaw Mountain Cattle Company as reimbursement for crop loss.

(b) $116,000 to Two Bar–Muleshoe Water Company as consideration for 3,321.86 acres of land underlying the Wheatland Reservoir No. 2.

(c) $1,051,500 to Springer Jones, Donna Jones, Estate of Vera Springer Jones deceased, Audra Weitzel and Betty Jeane Snell, the stockholders of Squaw Mountain Cattle Company, to compensate them for physical and emotional stress, embarrassment and loss of reputation resulting from the litigation with the Wheatland Irrigation District.

2. Without regard to the above distribution formula, the undersigned agree that their respective clients will take

such action, execute such documents and do all things necessary to modify the above distribution formula in the following manner:

(a) Wheatland Irrigation District will, on or before the 1st day of April, 1989, pay over to Squaw Mountain Cattle Company the first $382,000, due under the settlement agreement, with no interest payable thereon.

(b) If Wheatland Irrigation District shall elect under the settlement agreement to pay the entire sum of $1,250,000 in cash, then in that event the next $407,-600 (40.78% of $1,000,000) shall be paid into this court to be deposited by the court at the best possible interest rate, at the Key Bank of Laramie or such other banking institution in the State of Wyoming as is approved by Springer Jones, President of Squaw Mountain Cattle Company and Plaintiffs, to be held pending a decision and final order of the district judge of the Eighth Judicial District in this cause. It is stipulated also that Bowen, the McGuire trust and Bennett Ranches shall be entitled to have the said $407,600 paid directly to them to the extent of any judgment entered in their favor by the district court, together with the right to receive pre-judgment interest on the amount of any such judgment awarded to them at a rate commensurate with that received by the Clerk of Court on the deposit of $407,600, from the date the $407,600 is deposited by the court. The remaining funds out of the $1,250,-000, less the amount due Wheatland of $78,495.51 for unpaid assessments, or the amount of $381,904.49; together with any excess monies out of the $407,600 after entry of judgment, shall be payable jointly to Springer Jones, Donna Jones, the estate of Vera Springer Jones deceased, Audra Weitzel and Betty Jeane Snell.

3. If Wheatland Irrigation District does not elect to pay the balance due under the settlement agreement at the time of or after the $382,000 payment, in cash, then any judgment entered in favor of the individual and trust Plaintiffs, if not sooner paid, shall be paid out of the next annual installments due under the settlement agreement. Any such judgment shall be entitled to interest at the statutory rate from the date of the entry of judgment by the district court.

4. Plaintiffs shall take immediate steps to release the lis pendens which they recently filed in the office of county clerk, Albany County, Wyoming relative to this action and the transfer of title to the lands underlying the Wheatland Reservoir No. 2.

5. Upon payment of the $382,000 to Squaw Mountain Cattle Company, or upon the full payment of the $1,250,000 in cash, Plaintiffs and Defendants Squaw Mountain Cattle Company and all individual Defendants agree to dismiss with prejudice all claims and counterclaims against Wheatland Irrigation District.

Dated this 8th day of March 1989.

SMITH, STANFIELD & SCOTT
Attorneys for Squaw Mountain
Donna Jones, Springer Jones,
Estate of Vera Springer Jone[s],
Audra Weitzel, and Betty Jeane Snell
By: /s/ Thomas S. Smith

REX JOHNSON
Attorneys for Plaintiffs
/s/ Rex Johnson

JONES, JONES, VINES & HUNKINS
Attorneys for Wheatland Irrigation District
By: _____[3]

▮ Something else did not happen. At no time during the conduct of the proceeds division litigation, *Squaw Mountain Cattle Co.*, 804 P.2d 1292, did the minority shareholders, by contention of conflict of interest or otherwise, challenge continued representation of Squaw Mountain by the law firm. Actually, the conflict contention did

---

**3.** The status of the John Does One through Three achieves an interesting perspective in briefing and argument. The minority shareholders never amended to state specific persons, but the law firm is no doubt correct that the original intendment was to include them in that litigation. For some reason, the amendment was never made and the separate lawsuit was later instituted.

not really mature until July 31, 1990 when this present lawsuit was filed. Even then, the minority shareholders did not seek to require the law firm to withdraw as their opponent's counsel from the proceeds division litigation still in progress.

Two conclusions follow from this partial history. The minority shareholders accepted the settlement and, consequently, cannot raise another cause of action after their successes in division litigation. The stipulation to settle has resolved any contended factual issues which similarly provided froth and furry in the division litigation. Any potential challenge to the participation of the law firm in the division litigation is waived by failure to make the appropriate objection following entry of appearance in the proceeds division lawsuit where the minority shareholders succeeded in achieving a larger division of the Wheatland Irrigation litigation success. *Squaw Mountain Cattle Co.*, 804 P.2d 1292.

What is left for resolution here is the single issue that the law firm did represent the minority shareholders. Consequently, as present defendants, the law firm should have forced the majority shareholder, who undertook and funded the litigation, to be more generous and kindly rather than seeking to obtain most of the fund which was not so willingly paid by Wheatland Irrigation on settlement.[4]

The status of representation and conduct of the law firm in pursuing the primary interest of the majority shareholder was really not in factual issue during the six year effort and successful conclusion. It was initiated by a corporate resolution of approval to proceed in the name of the corporation and continue thereafter by the assumed financial responsibility of the majority shareholder and not the corporate entity or the minority shareholders. Everyone was happy with the results, except when it came time to settle up and split the pie.

## V. RELEVANT CASE LAW AND LEGAL ISSUES

In legal analysis, the independent entity of the corporation to be distinguished from individual shareholders was first recognized by this court in a suit by a shareholder against the corporation in *Wilson v. First Nat. Bank of Cheyenne*, 1 Wyo. 108 (Wyo.1873). That precept was followed in the considerably more complex case involving an action by a minority shareholder in *Smith v. Stone*, 21 Wyo. 62, 128 P. 612 (1912). Nothing in Wyoming case law has since developed a different understanding. Furthermore, the principle is recognized in the Wyoming Disciplinary Standards, which has a national source derivation. The Wyoming Rules of Professional Conduct for Attorneys at Law, Rule 1.13, "Organization as client," states in preliminary text:

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

\* \* \* \* \* \*

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Rules of Professional Conduct for Attorneys at Law, Rule 1.7 provides in part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will *not* adversely

---

4. Obviously, the original Wheatland Irrigation settlement was not computed in attributable damage amount on a pro-rated shareholder basis. There was much logic to the position of Springer Jones, although not accepted by the trial court or approved on appeal, that most of the damage proved, as well as all of the efforts undertaken, was to compensate for his loss and to credit his litigative persistency.

affect the relationship with the other client; and

(2) each client consents after consultation.

The resolution by which the lawsuit was initiated, duly signed by the directors (one of whom constitutes a member of the minority shareholders in this present litigation) stated in text:

### RESOLUTION

The undersigned, being all of the stockholders and directors of Two Bar–Muleshoe Water Company, do hereby take the following action by consent:

*RESOLVED* that Springer Jones, President, be and he is hereby authorized and directed to take such legal action, on behalf of the Company, as is in his sole and absolute discretion deemed necessary, against Wheatland Irrigation District, by reason of Wheatland's breach of the terms and provisions that certain Lease Agreement between Swan Land and Cattle Company, Ltd. and Wyoming Development Company executed on or about March 1, 1900 and further to petition the Court for an Order to show cause why the officers and directors of Wheatland should not be held in contempt for their failure and refusal to follow the Judgment and Order of the District Court, Platte County, relating to said lease, as modified by the Wyoming Supreme Court in the case of *Wheatland Irrigation District –vs– Two Bar–Muleshoe Water Company*, 521 P.2d 1334.

DATED this 30th day of May, 1983.

/s/ Springer Jones

/s/ Bernard McGuire

/s/ H. Richard Windling

There was never any secret during the course of all this litigation about the law firm being employed at the cost and direction of the majority shareholder. During the years of the litigation, this arrangement went satisfactorily with some apparent ups and downs. It did include an intermediate effort apparently directed by some or more of the minority shareholders to dissolve the corporation, but nevertheless continued until success was realized.

We can divide this course of events into three sequences: (a) collection litigation against Wheatland Irrigation; (b) division litigation between majority and minority shareholders; and (c) suit by minority shareholders against law firm representing majority shareholder. It is not completely clear from which sequence damages against the law firm are now claimed in this lawsuit. Sufficiency of the settlement in the collection litigation is foreclosed by stipulation and acceptance. Obligation of the majority shareholder to pay attorney's fees to the minority shareholders in the division litigation is foreclosed by the decision in the division litigation where the trial court denied recovery. We lack understanding why the denied claim for attorney's fees in the division litigation becomes a valid claim against the law firm. It must be either the law firm had a duty to advise and control their client regarding his interest in division or they should have withdrawn or not appeared in the division litigation after dispute erupted about the method of division of the settlement proceeds.

As we have said, the minority shareholders could have objected to the continued representation of Springer Jones and his company, Squaw Mountain, in the division litigation if they had so chosen. Clearly, that effort was not made and any complaint either in ethical challenge or damage complaint is waived by intentional choice, disinterest or inactivity.

We apply the rule of "reasonable promptness" to conflict of representation challenges by opposing litigants. *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032 (N.D.Ga.1981) (fifteen months into the litigation). The significance of a prompt request to withdraw and a comprehensive analysis of the entire subject of developed conflict of interest is provided in the often cited cases of *E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371 (S.D.Tex.1969); *Roth v. Roth,* 84 Ill.App.3d 240, 39 Ill.Dec. 872, 405 N.E.2d 851 (1980) (two years delay until shortly before trial); *Empire Life and Hospital Ins. Co. v. Harris,* 595 S.W.2d 904 (Tex.Civ.App.1980) (two days into trial); *River West, Inc. v. Nickel,* 188 Cal.App.3d

1297, 234 Cal.Rptr. 33 (1987) (at least thirty-nine months); and *Hudson v. State,* 250 Ga. 479, 299 S.E.2d 531 (1983) (issue must be raised prior to trial). Each applied a test of prompt action or, in *River West, Inc.,* also complainant's burden of proving justified delay. See also, where waiver concepts are applied, *Central Milk Producers Co-op. v. Sentry Food Stores, Inc.,* 573 F.2d 988 (8th Cir.1978) and *Redd v. Shell Oil Co.,* 518 F.2d 311 (10th Cir.1975). As one resource regarding waiver of right to disqualify by delay, see Restatement (Third) of the Law Governing Lawyers § 201, at 22 (Tentative Draft No. 4 1991).

This case in its facts takes us much further down the time line since no motion to disqualify was ever made. Instead, while division litigation was ongoing, this malpractice suit was filed against the law firm representing the opposing litigant. Consequently, if a claim could have been stated it can only relate to settlement of the first lawsuit in which the law firm was overtly representing the majority shareholder and, of necessity, the corporate entity.[5]

We concur in the implicit decision of the trial court that the law firm never did represent the minority shareholders. Although the subject in text there addressed was attorney/client privilege for the corporate attorney in resisting action of minority shareholders, the principle was simplistically addressed by 2 F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Oppression of Minority Shareholders* § 7:40, at 271 (1991): "An attorney employed by a corporation is, of course, not strictly a 'joint attorney' of the corporation and the suing shareholders * * *." Likely the most practical and definitive resource regarding ethical requirements of business lawyers is provided by Brooke Wunnicke, *Ethics Compliance for Business Lawyers* (1987).

 In text, Wunnicke recognized the corporate entity and the compatible rule which had earlier set forth in cited cases that the duty of the corporate attorney is

to his client—the corporate entity. Wunnicke, *supra,* at § 8.2. The citation of *Evans v. Artek Systems Corp.,* 715 F.2d 788 (2d Cir.1983) provides authority regarding the entity status and observation that the object of the disqualification rule is to preserve the integrity of the adversary system. That court further said:

> However, while we have not hesitated to disqualify counsel when the circumstances warranted it, we have also noted that "there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession."

*Evans,* 715 F.2d at 791 (quoting *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978)). We adopt and apply for Wyoming law the entity rule for the law firm representation of its client, the corporation, and not the shareholders. *Jesse by Reinecke v. Danforth,* 169 Wis.2d 229, 485 N.W.2d 63 (1992).

Nothing in this record reveals justification to attribute any intended or agreed representation by the law firm for the minority shareholders individually and as a group. *Skarbrevik v. Cohen, England & Whitfield,* 231 Cal.App.3d 692, 282 Cal. Rptr. 627 (1991); and *In re Conduct of Weidner,* 310 Or. 757, 801 P.2d 828 (1990). Conversely, the minority shareholders never independently demonstrated any willingness to be responsible for contribution to the litigative costs and expenses. On the first and most obvious justification for summary judgment in this case, the facts demonstrate without question that contrary to pleadings and argument, the law firm never, through the initial litigation or separately thereafter, assumed a duty of attorney for the minority shareholders. The duty of the majority shareholder to

---

**5.** For a substantive discussion and appropriate forms directed to disqualification of counsel for reasons of conflict or prior representation, see 2

Roger J. Magnuson, *Shareholder Litigation* § 19.20 (1991) and 3 Roger J. Magnuson, *Shareholder Litigation* § 26.25 (1991).

either the corporation or to the minority shareholders has been settled and resolved by our prior litigation.

Summary judgment is justified not by the absence of contested issues of fact of which there were many, but since the decision was justified as a matter of law by preclusive legal principles. *Cordova,* 719 P.2d 625. Following *Cordova,* this court recognized in *Davenport v. Epperly,* 744 P.2d 1110, 1112 (Wyo.1987) (quoting *Cordova,* 719 P.2d at 634) the appropriateness of summary judgment when based upon " 'substantive legal issue disposition.' " This case appropriately fits into that legal principle delineation with the well-established summary judgment law. In this record, existence of an attorney/client relationship or special assumed duty of the law firm to the majority shareholders invokes legal principles and is not presented in any contested relevant issues of fact. *National Sav. Bank of District of Columbia v. Ward,* 10 Otto 195, 100 U.S. 195, 25 L.Ed. 621 (1879); *Hayes v. American Nat. Bank of Powell,* 784 P.2d 599 (Wyo.1989); *Ricci v. New Hampshire Ins. Co.,* 721 P.2d 1081 (Wyo.1986).[6]

At this juncture, other appellate contentions will be left with minimal attention for our decision since we find that the attorney/client relationship is the essential element under the circumstances for maintenance of a legal malpractice lawsuit. *Brooks,* 792 P.2d 196; *cf. Carlson v. Langdon,* 751 P.2d 344 (Wyo.1988). *See also* Lawrence H. Averill, Jr., *Attorney's Liability To Third Persons For Negligent Malpractice,* II Land and Water L.Rev. 379 (1967). Additionally, we could easily find no damage beyond the denied attorney's fees already rejected for recovery by appellants in *Squaw Mountain Cattle Co.,* 804 P.2d 1292. However we limit or extend collateral estoppel and res judicata, it is difficult to perceive why, after the client, Squaw Mountain, was denied obligation for attorney's fees accrued by the minority shareholders in the division litigation, the attorneys representing Squaw Mountain should now be asked to shoulder that previous rejected burden against their client. Dispositively at this stage, we choose not to pursue the collateral estoppel-res judicata defensive concepts, although those were well briefed and thoroughly presented. *See, e.g., Marias v. Marano,* 120 Idaho 11, 813 P.2d 350 (1991); *Kelly v. Foster,* 62 Wash.App. 150, 813 P.2d 598 (1991); and *Jackson Trak Group By and Through Jackson Jordan, Inc. v. Mid States Port Authority,* 242 Kan. 683, 751 P.2d 122 (1988).

## VI. CONCLUSION

Stripped of emotional complexities and unfortunate challenges of adverse conduct characterizations in the litigation, this voluminous record presents a very simple case. A majority shareholder as one entity, with approval of the minority shareholders, undertook very expensive litigation to collect money in the interest of the parent corporation from a third party. The majority shareholder employed attorneys to pursue this litigation with the knowledge and overt concurrence of the minority shareholders, provided all expenses were borne by the majority shareholder as proponent. At the majority shareholder's expense, expensive and overtly difficult litigation was resolved by a favorable settlement. The shareholders then came to disagree about proceeds division with resolution finally achieved by further litigation in a fashion entirely favorable to the minority shareholders. As the appeal of that decision from the trial court was pending, the minority shareholders instituted a lawsuit against the attorneys who won the war.

We agree with the summary judgment granted by the trial court and affirm its decision.[7]

---

**6.** Springer Jones, president of Squaw Mountain, may have been ungenerous in his intendment to divide the hard won process of six years of unrelenting effort while the minority shareholders stood on the sidelines and went along only for a completely free ride.

**7.** There is a counterclaim yet pending since our consideration of this case occurred which required a supplementary order to provide a W.R.C.P. 54(b), no just cause for delay certification. The decibel level, now two cases removed from the "[h]ope springs eternal" comment,

CARDINE, Justice, specially concurring.

I concur in the result but not the legal rationale. This opinion of the court seems to hold that a party may not sue the lawyer of an adverse party. If this is a general rule, there are exceptions. Lawyers are as responsible as any other citizen in a proper case for harm caused others. The case against this "more experienced trial firm," however, is not such a case.

BROWN, Justice (Retired), concurring with whom CARDINE, Justice, joins.

I agree with the majority that this case be affirmed; however, I do not agree with the packaging of the majority opinion for publication. It seems that the issue before the court is simple; however, the majority obscures its holding with phantom sub-issues and a profusion of unnecessary commentary.

The adjudicative facts of this case are uncomplicated. Squaw Mountain Cattle Company (Squaw) is the majority shareholder in Two Bar–Muleshoe Water Company (Two Bar) and appellants are the minority shareholders. Both Squaw and Two Bar employed appellees to represent them in an action against Wheatland Irrigation District (WID).

In the litigation against WID, all the costs and attorney fees were paid by Squaw. None of appellants paid any of the costs or attorney fees, nor were they asked to. A favorable settlement offer was proposed by WID. At a Two Bar shareholders meeting on September 9, 1988, Squaw approved the settlement and appellants, minority shareholders, rejected the settlement offer. Appellants and their attorney were present at the September 9 shareholders meeting.[1] Appellants did not disagree with the amount of the settlement, but rather the proposed division of $1,250,000 between majority stockholder Squaw and minority stockholders (appellants). The dispute between the majority stockholder and the mi-nority stockholders with respect to allocation of WID settlement resulted in a lawsuit filed by appellants. In the division lawsuit, the minority stockholders were successful and recovered substantially the amount of their principal claim. However, they were not awarded attorney fees or punitive damages.

After the division suit, appellants here (minority stockholders in Two Bar) ran out of entities to sue, so they sued the attorneys who represented Squaw and Two Bar. In this latest lawsuit against Squaw's attorneys, appellants here contend that they were clients of appellees and apparently contend that appellees should have required a division more favorable to them. In their lawsuit, appellants specified five causes of action: breach of fiduciary duty, conspiracy, breach of contract, fraud, and legal malpractice. They also demanded judgment for costs, attorney fees, and other damages they sustained in the division lawsuit. The trial court determined that appellee attorneys never represented the minority stockholders (appellants) and summary judgment was entered accordingly.

Resolving a single issue is dispositive of this appeal. Did an attorney/client relationship exist between minority stockholders in Two Bar and the attorneys who represented the corporations, Two Bar and Squaw?

An attorney who represents a corporation does not, because of that corporate representation, also represent the individual stockholders. *Skarbrevik v. Cohen, England & Whitfield,* 231 Cal.App.3d 692, 282 Cal.Rptr. 627, 634 (1991). Some additional circumstance other than representing the corporation must come to pass before the corporate attorney also becomes the attorney for a stockholder. Whether an attorney/client relationship exists is a question of law. *Meehan v. Hopps,* 144 Cal.App.2d 284, 301 P.2d 10, 11 (1956). The facts necessary to make that determination are not in dispute. There is no indication in

*State ex rel. Squaw Mountain Cattle Co.,* 728 P.2d at 179, does not necessarily provide confidence that the infinite willingness of these participants to yet discontinue this course of litigation has presently been achieved.

1. One appellant had been represented by his own counsel since 1984. Another appellant was represented by counsel since August 1988.

the record that any of appellants (minority stockholders) ever contacted appellees (attorneys) in regard to the Wheatland Irrigation District litigation or for any other purpose. Furthermore, appellants did not pay any attorney fees or costs; nor were they billed or expected to pay any of the expenses.

In their affidavits opposing summary judgment, appellants merely state that in their "opinion," "belief," "understanding," "feeling," and "intention," appellees represented the shareholders. Opinion or belief by appellants is insufficient to rebut a prima facie showing that an attorney/client relationship did not exist.

It has not been shown that an attorney/client relationship existed between appellants and appellees. In fact, the record shows that there was no such relationship. An attorney/client relationship is the essential element for the maintenance of a malpractice lawsuit. *Brooks v. Zebre*, 792 P.2d 196, 201 (Wyo.1990). Whether a legal duty exists is a question of law, and absent a duty, there is no liability. *Allmaras v. Mudge*, 820 P.2d 533, 536 (Wyo.1991). Summary judgment was, therefore, justified as a matter of law, the trial court having determined that appellants were never represented by appellees during the WID litigation. *See Davenport v. Epperly*, 744 P.2d 1110 (Wyo.1987); *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986).

Each of appellants' five causes of action was premised on an attorney/client relationship between the minority stockholders and the attorneys. Failure to show that relationship was fatal to all causes of action.