Joseph M. Brennan and Henry W. Stepo, Plaintiffs-Appellees, v. Joseph Leshyn, d/b/a Leshyn Greenhouses, Defendant-Appellant.

Gen. No. 49,247.

First District, Second Division.

July 3, 1964.

Fred J. O'Conner, of Chicago (Norton Wasserman and Ronald A. Orner, of counsel), and Charles D. Snewind, Orner & Wasserman, of Chicago (Norton Wasserman, of counsel), for appellant.

Warren J. Hickey, of Chicago (Edward Wolfe, of counsel), for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a judgment entered on a jury verdict on February 19, 1963, in the Circuit Court of Cook County in favor of plaintiff, Joseph Brennan, in the amount of $10,000, and in favor of plaintiff, Henry Stepo, in the amount of $4,000. The defendant, Leshyn Greenhouses, charges the following errors in regards to liability: (1) inadequate opportunity was given to explain a prior inconsistent statement with which defendant, Joseph Leshyn, had been impeached; (2) the court improperly refused to admit a photo-

graph into evidence; (3) the jury was improperly instructed as to the burden of proof. Defendant also charges that the court erred in receiving evidence going to damages by ignoring the best evidence rule and by allowing hearsay statements.

Joseph Brennan and Henry Stepo were firemen injured while fighting a fire at the Leshyn Greenhouses on October 16, 1952. The immediate cause of their injury was a fall into a boiler pit approximately four feet deep, eighteen feet long and about ten feet wide. The boiler and boiler pit were located in a brick veneered building adjacent to and connected to a wooden shed which was the site of the main blaze. There was some flame at the corner of the boiler building along a wooden roof. The room was filled with smoke. There is a dispute whether there were actual flames at the end of the room at which the firemen entered. Brennan and Stepo entered the boiler room and fell into the pit at different times.

The main dispute before the lower court centered around whether there was a wooden railing surrounding the pit at the time of the fire. Physical evidence following the fire was inconclusive and the question was one of fact to be determined by the jury.

During the course of the trial defendant was called as a witness by plaintiffs under section 60 (Ill Rev Stats c 110, § 60) and admitted making a prior inconsistent statement in regards to who built the railing in existence at the time of the fire. He stated:

"In my deposition of April of 1959 I stated that Charles Anderson might have built the wooden railing around the boiler pit prior to the fire. I say today that Robert McLarney built the railing but in 1959 I thought that Charles Anderson built it. I didn't remember at that time which one of these gentlemen built it. . . . It was Robert

136

McLarney who built this railing. . . . I think my memory is better now."

The next afternoon Mr. Leshyn's attorney called him for direct examination and began to inquire into the inconsistency again. Mr. Leshyn testified that Mr. McLarney had constructed the railing during the spring of 1951. He was then asked if after the fire the railing was replaced. The court sustained an objection to proceeding with the questioning although defendant stated he wanted to clarify the previous day's testimony. On cross-examination plaintiffs' attorney again re-emphasized the inconsistent statement on several different occasions. On redirect examination defendant stated:

"I first learned that Robert McLarney had constructed the railing in April of 1951 when we were recalling the incident while working. It was sometime yesterday when I first found out the difference in the dates when Mr. Anderson worked and Mr. McLarney worked. I found this out sometime yesterday morning. I looked through my records to see what days people were working for me. I discovered that Mr. McLarney left my employment at such and such a time, and that Anderson started to work for me such and such a time. . . .

"When I gave my deposition I didn't have the records in the office. I had them at home. They were still at home yesterday. These were the records in which I first found out that McLarney was the one who did the work. In 1959 I thought Anderson worked for me at the time, I never told my lawyer after that, that I was mistaken."

■■■ Defendant argues that failure of the court to allow ample explanation of Mr. Leshyn's incon-

sistent statements during direct examination over the objection of defendant constituted reversible error. He now contends that if allowed to produce evidence he would have shown that defendant's confusion between two instances of rebuilding caused the contradiction. It is of course true that where a witness admits contradictory statements imputed to him the witness should have ample opportunity to give such reasons or explanations in exculpation of his conduct as he might have and to show the circumstances under which the contradictory statement was made. Forslund v. Chicago Transit Authority, 9 Ill App2d 290, 299, 300, 132 NE2d 801 (1956); Gard, Illinois Evidence Manual, Rule 489 (1963); 1959 Illinos Law Forum 695, 725. The defendant gave an adequate explanation of the inconsistency on redirect examination. He cannot be heard to say that he intended to say more or remark along a different line without properly preserving the objection by means of an offer of proof. Smith v. Smith, 5 Ill App2d 383, 389, 390, 125 NE2d 693 (1955); 3A Nichols Illinois Civil Practice § 3424 (1961). It should also be noted that we are precluded from finding error in this ruling of the court since the point was neither raised in the post-trial motion nor argued before the court in the post-trial hearing.

Defendant next argues that the court erred in refusing to admit a photograph of a railing admittedly built after the fire, which photograph would have aided the defendant in showing the existence of a railing at the time of the fire. Defendant's witness Robert Renda, who testified that he was familiar with the railing prior to the fire was not allowed to point out the differences between the railing in the photograph and that which existed prior to the fire. Mr. Renda cared for the boiler at the time of the fire and was familiar with the premises.

138

In order to have a photograph admitted in evidence it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to the issue and verified by such witness on personal knowledge as a correct representation of the facts. The witness need not be the photographer, nor need he know anything of the time or condition of the taking, but he must have personal knowledge of the scene or object in question and testify that it is correctly portrayed by the photograph. Kooyumjian v. Stevens, 10 Ill App2d 378, 388, 135 NE2d 146 (1956); 4 Callaghan's Illinois Evidence § 8.65 (1964); 3A Nichols Illinois Civil Practice § 3344 (1961). The admissibility of the photographs is within the discretion of the court (Pitrowski v. New York C. & St. L. R. Co., 6 Ill App2d 495, 499, 128 NE2d 577 (1955)) and although the photographs are not evidence themselves, they are allowed for the purpose of enabling the jury to understand and apply the testimony. Foster v. Bilbruck, 20 Ill App2d 173, 183, 155 NE2d 366 (1959). Changed conditions at the time of taking, do not necessarily render the photograph inadmissible if it can be shown by testimony that after the changes are explained, the jury will be able to understand it clearly as a correct representation and not be misled by it. Terry v. City of Chicago, 320 Ill App 342–344, 51 NE2d 71 (1943); Rehnbloom v. City of Berwyn, 329 Ill App 327, 68 NE2d 479 (1946); Gard, Illinois Evidence Manual, Rule 336 (1963).

Appellees maintain that the photograph, assuming that the prior railing either did not exist or was destroyed in the fire, was a posed photograph. In Gard, Illinois Evidence Manual, Rule 337, p 407, the author comments on posed photographs:

> "The posed photograph may be compared with the drawing which the witness makes in the

course of his testifying, upon which he places the various objects and persons at the places he remembers them to have been at the time of the occurrence as he observed it. . . ."

In this case defendant's photograph was taken just prior to the trial. It differed from several of plaintiffs' photographs taken just following the fire by the fact that a railing appeared in defendant's photograph. We do not believe that the railing falls into the same category as the changed conditions in the Terry and Rehnbloom cases. In this case the presence of a railing was the main fact in controversy throughout the trial. In the changed conditions cases the changes refer to collateral facts not vital to the point demonstrable by the photograph. In this case the basic pit structure was identical to the conditions present in 1952. The railing, however, although presently existing and functional, was introduced for the purpose of reconstruction of the premises at the time of the occurrence as the witnesses Renda and Leshyn remembered it. For this reason it falls more clearly into the posed photograph area. Gard (supra) advocates that the posed photograph should be readily admissible on the same basis as drawings or sketches. The Illinois cases, however, have been reticent to admit such photographs. We believe that it was within the discretion of the court in this case to exclude the photograph and that no reversible error was committed.

Defendant contends that the court improperly refused to give its instruction Number 11 defining burden of proof. That instruction read:

"When I say that a party has a burden of proof on any proposition, or use expressions 'if you find,' or 'if you decide,' I mean you must be persuaded, considering all the evidence in the

140

case, that the preponderance on which he has the burden of proof is more probably true than not true."

Plaintiffs' instruction Number 12, which stated that the plaintiffs have the burden of proving each of the following several propositions, was given and that instruction ended:

"If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiffs, but if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."

The court believed that defendant's instruction was confusing and unnecessary and that it should not be given. Defendant's refused instruction is almost a verbatim transcript of IPI instruction 21.01—Meaning of Burden of Proof. The Note on Use states that this instruction should be given with Instructions 21.02, etc. Plaintiffs' Instruction Number 12 is modeled after IPI instruction 21.02—Burden of Proof on the Issues. One of the goals of modern instruction procedure is to present a fair and complete single instruction on the issues and on the burden of proof. The purpose of the instruction is to inform the jury as fairly and clearly as possible of their duties as the trier of the fact. Their obligation should not be enlarged or complicated by several issues instructions and several burden instructions. Barber v. Finch, 35 Ill App2d 267, 273, 182 NE2d 895 (1962). In the past courts of this state have held that failure to define the term "preponderance of the evidence" is not reversible error. Scerrino v. Dunlap, 14 Ill App2d 355, 368, 144 NE2d 859 (1957); Chicago City Ry. Co. v. Kastrzewa, 141 Ill App 10, 15 (1908).

■ ■ The rule is that legal phrases not understood by laymen or words or terms from a foreign language not in common use among the people need to be defined. Nowak v. Witt, 14 Ill App2d 482, 488, 144 NE2d 813 (1957); 3A Nichols Illinois Civil Practice § 3636 (1961). We believe that the court did not commit reversible error by failing to define the term burden of proof according to the IPI instruction. The term is commonly used and the jury may be presumed to know its meaning.

■ ■ Several errors have been alleged to have affected the damages in this case. Plaintiffs introduced copies of itemized hospital bills for Henry Stepo which were typed on February 12, 1963, just prior to the commencement of the trial. These bills showed periods of hospitalization in the year 1953. They were stamped paid with 8/4/53 or 8/5/53 written over the stamp. Defendant contends that the introduction of these documents violates the best evidence rule. The defendant made an objection at the time the bills were offered into evidence. His objection charged only that the dates on the bills were just prior to the trial. He made no demand upon the plaintiffs to produce the original hospital records. It is settled that a general objection to the admission of secondary evidence does not preserve the best evidence question for purposes of review. Tucker v. Duncan, 224 Ill 453, 455, 79 NE 613 (1906); Atkinson Trust & Savings Bank v. DeReu, 337 Ill App 363, 368, 86 NE2d 149 (1949); 4 Callaghan's Illinois Evidence § 6.15 (1964).

■ Plaintiff Brennan was treated by Dr. Vachout, a traumatic surgeon, for his broken leg while he was hospitalized following the fall. After Brennan left the hospital he was not seen again by Dr. Vachout until February 11, 1963, when he was again subjected to a physical examination for the purpose of testifying at the trial whether plaintiff showed any persistent swelling or bone overgrowth. At that time Brennan

142

stated that: "It would give way." The doctor testified that he found that the right knee was a little larger than the left which indicated either soft tissue swelling or soft bone enlargement, that the knee could not be flattened and that there was some limitation as to complete flexion. Defendant objected that Dr. Vachout's relation of Brennan's subjective symptoms at the time of the examination was hearsay. He argues that Dr. Vachout had ceased to be a treating physician within the meaning of the exclusion and at the time of the pretrial examination he had merely assumed the status of expert. The rule was stated by the court in Santiemmo v. Days Transfer, Inc., 9 Ill App2d 487, 496, 133 NE2d 539 (1956):

". . . It has long been the rule in this State that the attending physician may testify as to the statements made to him by the plaintiff concerning his condition, if such statements had guided him in making his diagnosis. (Citations omitted.) . . . It is undoubtedly the law that the testimony of a physician examining a patient solely for the purpose of testifying in the trial, as an expert witness is confined solely to objective symptoms. (Citations omitted.) . . ."

See Jensen v. Elgin, Joliet & Eastern Ry. Co., 24 Ill2d 383, 388, 182 NE2d 211 (1962) for a similar statement of the rule. Plaintiff relies upon Quirk v. Schramm, 333 Ill App 293, 299–301, 77 NE2d 417 (1948) where Dr. Klabacha who had treated plaintiff for a broken arm at the time of the accident subsequently went into the armed forces, examined the plaintiff just prior to the trial and testified to her subjective symptoms there. The court stated:

". . . The evidence shows that Doctor Klabacha treated plaintiff Mary Quirk for a period of four or five weeks commencing on the evening of the

occurrence and that about a year and seven months had elapsed from the time he had last treated her to the time of the examination made at the court house for the purpose of testifying. Defendants rely on Greinke v. Chicago City Ry. Co., 234 Ill 564, and Thomas v. Illinois Power & Light Corp., 247 Ill App 378. An examination of these cases discloses that in each case the physician who was called as a witness had not treated the injured person but had made an examination solely as a basis upon which to found an opinion to be given in a trial. It is not disputed that Doctor Klabacha was plaintiff's attending physician, and we do not think that his absence in the army changed his status as an attending physician."

The above reasoning disposes of the case before us although the lapse of time here is considerably longer. It should also be observed that none of Dr. Vachout's testimony was based upon the subjective symptoms testified to by Brennan, as was the case in Jensen v. Elgin, Joliet & Eastern Ry. Co. (supra), but was based on measurements and tests performed by the doctor himself.

We believe that no substantial error was committed in the trial of this case.

The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.