Patricia A. **MILLER** and Harry M. Miller, Appellants (Plaintiffs below),

v.

**REIMAN–WUERTH COMPANY**, a Wyoming Corporation, Appellee (Defendant below), James W. Grandpre, Wyoming Beverage, Inc., Oliver Olsen, d/b/a Frontier Distributing Co., the State of Wyoming, State Highway Commission of Wyoming, and City of Cheyenne (Defendants below).

**No. 5074.**

Supreme Court of Wyoming.

July 27, 1979.

David H. Carmichael, of Carmichael, McNiff & Patton, Cheyenne, and John E. Stanfield, of Smith, Stanfield & Scott, Laramie, signed the briefs, and David H. Carmichael, Cheyenne, appeared in oral argument on behalf of appellants.

David D. Uchner and Nick Kalokathis, of Lathrop & Uchner, P.C., Cheyenne, signed the brief and David D. Uchner, Cheyenne, appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellants-plaintiffs appeal from a summary judgment in favor of appellee-defendant (Reiman-Wuerth Company) in which the District Court determined that such be final and that there was no just reason for delay in the entry of it. Appellee, Reiman-Wuerth Company, was only one of several defendants in an action for alleged damages resulting from a multi-vehicle collision. The driver and owner of one of the vehicles involved in the collision, James W. Grandpre (also a defendant), was an employee of appellee. Appellants state the issue on appeal to be: "Is there a genuine issue of material fact concerning the vicarious liability of Appellee for the acts of its servant [Grandpre] which caused damage to the [appellants]?" The trial court found that there was no genuine issue as to any material fact and that appellee was entitled to a summary judgment as a matter of law. We affirm.

Grandpre was employed as a carpenter by appellee on a construction jobsite in Cheyenne. On January 6, 1977, Grandpre requested permission to leave the job for the purpose of depositing his paycheck before 3:00 p. m. in a local bank so that some of his outstanding checks would not be dishonored. Also, he stated that he felt his ex-wife's employment by the bank might be jeopardized if his account were overdrawn. He was granted the requested permission by his supervisor.

It was the policy of appellee to allow employees to take time off for such personal activities, but it expected employees to take only the time necessary to accomplish such, and it did not pay employees for the time involved therein. Grandpre made his request and made his trip to the bank under these conditions. He drove his own automobile to the bank, made the deposit, and

was involved in the collision while returning to the jobsite. He had never driven his own automobile on appellee's business, but was furnished a vehicle owned by appellee for such purpose.

The foregoing facts are not in dispute. The dispute arises over appellants' position: (1) that the trip was, at least in part, for the benefit of appellee or was employment related inasmuch as it contributed to Grandpre's "happiness" and thus made him a better and more efficient employee—all to appellee's benefit as evidenced by appellee's policy which made the trip possible; (2) that appellee exercised control over the trip by requiring Grandpre to return to work immediately after completing his personal activity; and (3) that the determination of these two things (and thus the determination of whether or not the trip was in the scope of employment) was a question *of fact for the jury.* The fallacy of appellants' position lies in a misunderstanding or misapplication (1) of the definition of the term "scope of employment" and (2) of those issues in this matter that are questions of fact.

The meaning and application of the term "scope of employment" has necessitated considerable judicial attention. The general principles relative thereto are set out in 1 Restatement of Agency 2d (ALI 1958), pp. 504–524, as follows:

"§ 228. General Statement

"(1) Conduct of a servant is within the scope of employment if, but only if:

"(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master, and

"(d) if force is intentionally used by the servant *against another, the use of* force is not unexpectable by the master.

"(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too

little actuated by a purpose to serve the master.

\* \* \* \* \* \*

"§ 229. Kind of Conduct within Scope of Employment

"(1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

"(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

"(a) whether or not the act is one commonly done by such servants;

"(b) the time, place and purpose of the act;

"(c) the previous relations between the master and the servant;

"(d) the extent to which the business of master is apportioned between different servants;

"(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

"(f) whether or not the master has reason to expect that such an act will be done;

"(g) the similarity in quality of the act done to the act authorized;

"(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

"(i) the extent of departure from the normal method of accomplishing an authorized result; and

"(j) whether or not the act is seriously criminal.

\* \* \* \* \* \*

"§ 230. Forbidden Acts

"An act, although forbidden, or done in a forbidden manner, may be within the scope of employment.

\* \* \* \* \* \*

"§ 231. Criminal or Tortious Acts

"An act may be within the scope of employment although consciously criminal or tortious.

\* \* \* \* \* \*

"§ 232. Failure to Act

"The failure of a servant to act may be conduct within the scope of employment.

\* \* \* \* \* \*

"§ 233. Time of Service

"Conduct of a servant is within the scope of employment only during a period which has a reasonable connection with the authorized period.

\* \* \* \* \* \*

"§ 234. Area of Service

"Conduct is within the scope of employment only in the authorized area or in a locality not unreasonably distant from it.

\* \* \* \* \* \*

"§ 235. Conduct Not for Purpose of Serving Master

"An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.

\* \* \* \* \* \*

"§ 236. Conduct Actuated by Dual Purpose

"Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.

\* \* \* \* \* \*

"§ 237. Re-entry into Employment

"A servant who has temporarily departed in space or time from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business."

In the most recent case in which this court considered the term "scope of employment," we said that a person was acting within the scope of employment:

"If, at the time of the accident, the employee is engaged in furthering the employer's business interests, and with respect thereto the employer has the right to control the details of the work and to discharge the employee for failing to follow orders without incurring liability \* \* \*." *Combined Insurance Company of America v. Sinclair,* Wyo., 584 P.2d 1034, 1043 (1978).

■ The term "scope of employment" therefore has a distinct meaning by law. Although generally the determination as to whether or not one is acting within the scope of employment is a question of fact for the jury, *Sun Land and Cattle Co. v. Brown,* Wyo., 394 P.2d 387 (1964); *Barnes v. Fernandez,* Wyo., 526 P.2d 983 (1974), the determination of the definition of it or the standard under which it is ascertained is a question of law for the court. *Durham v. State,* Wyo., 422 P.2d 691 (1967); *Brennan v. Leshyn,* 51 Ill.App.2d 132, 201 N.E.2d 167 (1964); 75 Am.Jur.2d, Trial, § 701; 88 C.J.S. Trial § 318. Accordingly, if this case were presented to the jury, the court would have to instruct it sufficiently as to the meaning of the term "scope of employment" so that the jury could properly apply the facts under the law.

■ When we examine the facts of this case to which these instructions would apply, we find that this is one of the cases which come within the exception enunciated in *Combined Insurance Company of America v. Sinclair,* supra, to the general proposition on this point, i. e., that the scope of employment issue "is ordinarily a question of fact for the jury and becomes a question of law only when but one reasonable inference can be drawn." The only reasonable inference that can be drawn from the facts of this case under the applicable law is that Grandpre was not acting within the scope of his employment by appellee at the time of the collision.

In focus on this point, we note that in addition to the previously recited undisputed facts, it is not contested that appellee's policy to allow its employees time off for personal errands does have some benefit in contributing to the "happiness" of the em-

ployees. Nor is it contested that appellee expected and directed employees to use only such time as necessary to complete the personal errands. The only contest, then, is whether or not the policy and direction, without more, place the employee in the scope of employment. To accept appellants' contention that they do would also require acceptance of the contentions that policies for employee "happiness" by allowing vacations, no Saturday work, or lunch hours, coupled with directions to return to work immediately after the end of vacation, or after one hour for lunch, or at 8:00 a. m. each working day, would place the employees in the scope of employment, without more, while on vacation, on Saturdays, during lunch hours—in fact, at all times. Under the legal definition of "scope of employment" a reasonable mind could not find activities of these types, without more, to be within the scope of employment.

We reach the conclusion that Grandpre was not within the scope of employment by appellee at the time of the incident even under the oft-repeated standard by which we review a denial or grant of a summary judgment on appeal: that the moving party has the burden of showing absence of a genuine issue of a material fact, *Timmons v. Reed,* Wyo., 569 P.2d 112 (1977); and that we look at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from facts contained in affidavits, exhibits, and depositions, *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976); *Timmons v. Reed,* supra.

Grandpre's conduct at the time of the collision was not actuated in any part by a purpose to serve appellee (§ 228, 1 Restatement of Agency 2d, supra); Grandpre's errand was not done with intention to perform it as a part of or incident to a service on account of which he was employed (§ 235, 1 Restatement of Agency 2d, supra); and Grandpre was not furthering the business interests of appellee in any part at the time of the collision (*Combined Insurance Company of America v. Sinclair,* supra).

Grandpre was not acting in the scope of employment by appellee at the time of the collision.

Affirmed.