Carey HAMILTON, and Mel Hamilton, individually and in his capacity as next friend of Derek Hamilton and Zella Hamilton, minors; and Malik Hamilton, Appellants (Plaintiffs),

v.

NATRONA COUNTY EDUCATION ASSOCIATION, an unincorporated association, Appellee (Defendant).

No. 94–135.

Supreme Court of Wyoming.

Aug. 8, 1995.

Patrick Dixon of Dixon & Despain, Casper, for appellants.

Rex O. Arney and Todd H. Hambrick of Murane & Bostwick, Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Appellant Carey Hamilton (Carey) and members of her family (Hamiltons) filed a suit against appellee Natrona County Education Association (NCEA) to recover damages for injuries Carey suffered at a party given by the president of NCEA. Concluding NCEA owed no duty of care to Carey and her family members and no legal basis for liability existed, the district court granted

summary judgment to NCEA and the Hamiltons appeal.

We affirm.

The Hamiltons present these issues:

A. Was Davis acting within the scope of her authority in organizing and hosting the party, so as to impose vicarious liability on the NCEA?

B. Should Wyoming adopt the theory of enterprise liability so as to hold the NCEA legally responsible for this activity?

C. Should the doctrine of apparent authority be applied to extend liability to the NCEA?

D. Did there exist genuine issues of material fact which prevented summary judgment?

NCEA presents only one issue:

1. Did the trial court err by determining that the NCEA had no duty?

## FACTS

NCEA, a private non-profit corporation, is a voluntary association of classroom teachers located within the Natrona County School District. Affiliated with state and national organizations, it provides contract negotiations, grievance representation, lobbying, and other support for its members. NCEA also has a social committee headed by a chairperson which occasionally sponsors social functions.

In June of 1992, Nancy Duitscher Davis (Duitscher) and Rodney L. Davis (Davis), then dating, but now married, held an outdoor party at Davis' home in Evansville, Wyoming. Duitscher, the president of NCEA, and Davis, a county extension agent, each extended invitations to co-workers, friends, and neighbors. Duitscher prepared a written invitation addressed to "old and new NCEA Executive Board members" (Board). During the party, the elevated deck attached to the Davis home collapsed. At the time of the collapse, about ten or twelve people were on it, including Carey Hamilton, who fell more than eight feet and sustained a fractured vertebrae and other injuries.

Carey's husband, Mel, had been elected to the Board, his term just beginning that June. Duitscher had called Mel during business hours at the school where he taught and told him the "board members were going to get together." During that call, Mel expressed interest to Duitscher in attending a social function, which would permit him to speak to the board member, Karla Downing, whom he was replacing. Carey and Mel attended the party believing it to be an NCEA function. Of the thirty-five other people who attended the party, only five were current or former members of the Board. Seventeen of the guests were Davis' co-workers and their families.

On September 28, 1993, Carey and her family members filed a negligence suit against NCEA, claiming NCEA, "as sponsor, promoter, organizer and host of this business/social function owed a duty of care to its invitees". The Hamiltons claimed the duty had been breached by NCEA's failure to inspect the premises or warn of the defective deck and such negligence had caused personal injury, emotional distress and loss of consortium damages. NCEA moved for summary judgment, asserting no material issues of fact existed as to whether NCEA had sponsored or authorized the party because it was Duitscher's private party, NCEA had not requested, approved, or paid for any of it, and therefore, as a matter of law, no duty was owed to Carey by NCEA. The Hamiltons claimed material questions of fact existed concerning whether NCEA was directly liable because it had sponsored the party or whether NCEA was vicariously liable under either respondeat superior, enterprise liability, or apparent authority theories precluding summary judgment. The district court granted NCEA's motion for summary judgment and this appeal followed.

## STANDARD OF REVIEW

Summary judgment will be sustained only if there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Lyden v. Winer*, 878 P.2d 516, 518 (Wyo.1994). A material fact is one that establishes or refutes an essential element of a cause of action

or a defense asserted by a party. *Lyden*, 878 P.2d at 518. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo.1994). On appeal, this court examines the entire record in the light most favorable to the party who opposed the motion, affording to that party all favorable inferences which may be drawn from the materials either supporting or opposing the motion. *Lyden*, 878 P.2d at 518. If a dispute exists over a material fact which leads to conflicting interpretations or if reasonable minds might differ, then summary judgment is improper. *Lyden*, 878 P.2d at 518.

## DISCUSSION

### *Direct Liability–Duty*

While usually duty is a question of law, Hamiltons assert duty springs from the relationship between the parties and when that relationship is in dispute, duty is a question of fact precluding summary judgment. Until the jury determines the specific issue as to whether the NCEA sponsored the June 6, 1992, party or whether it was a private party hosted by Davis, they reason it was error to grant summary judgment.

 In stating a cause of action for negligence, the complaint must allege the defendant owed a duty to the plaintiff, the defendant breached that duty, and the plaintiff's injury was proximately caused by the breach. *Downen*, 887 P.2d at 520. "Essential to any negligence cause of action is proof of facts which impose a duty upon defendant. The question of the existence of a duty is a matter of law for the court to decide." *Goodrich v. Seamands*, 870 P.2d 1061, 1064 (Wyo. 1994), citing *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 931–32 (Wyo.1981). A duty may arise by contract, statute, common law, or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. *Goodrich*, 870 P.2d at

1064; *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1280 (Wyo.1983).

In moving for summary judgment, NCEA provided affidavits and minutes of NCEA executive board meetings indicating NCEA did not approve, plan for, or pay for any part of the party. The written invitation was addressed as from "Rod and I" and made no claim the party was an NCEA function. The party was held at a nonmember's home who testified it was his and Duitscher's private party for the couple's friends, neighbors, and associates. Duitscher also testified it was a private party.

In response, the Hamiltons provided no evidence directly disputing the facts presented, but instead, pointing to the NCEA bylaws directing the president "shall have the responsibility of maintaining good rapport with the membership", they contend it can be inferred Duitscher was acting for the NCEA. Their specific evidence supporting the inference is provided by an affidavit testifying a party was discussed at an NCEA meeting followed shortly afterwards by Duitscher's invitations addressed to "board members". Further, they say Duitscher used the school mail system authorized for NCEA use and listed her office phone number for responses, actions more suited to an NCEA social function rather than a private party.

WYO. RULE OF CIV.PROC. 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See also Downen*, 887 P.2d at 519.

The specific facts provided by the Hamiltons raise a genuine issue of fact as to whether NCEA sponsored the party only if Duitscher, as president, acted for the NCEA. Under NCEA's organizational bylaws, the president does have prime responsibility for

good rapport; however, only the executive board can approve expenditures for NCEA activities. That the board did not approve any payment for the party is undisputed. NCEA also had a social committee for those functions which were NCEA-sponsored and that the committee was not involved in organizing this party is undisputed. Also undisputed is that the school mail was frequently used for personal mail and the Hamiltons provide no evidence Duitscher was not permitted to accept personal phone calls at her office number. Her home phone number was also listed on the invitation.

■ Without specific facts disputing evidence that NCEA took no action to authorize a party, the only reasonable inference to be drawn is that NCEA did not approve or sponsor the party. Without evidence NCEA took action to sponsor the party, a duty on its part did not arise. Without such a duty, NCEA cannot be liable to Duitscher's guest on a negligence theory. The district court appropriately granted summary judgment on this issue.

### Vicarious Liability

■ Hamiltons claim NCEA is vicariously liable for Duitscher's negligence under the doctrines of *respondeat superior,* apparent authority or enterprise liability. Under the first two theories, an organization is liable for the tortious conduct of its officers, agents or employees acting within the actual or apparent scope of their authority or scope of their employment. Enterprise liability is not recognized in Wyoming.

#### 1. Respondeat Superior

■ Under the *respondeat superior* theory, an employer will be held liable for the negligence of an employee who is acting within the scope of employment. *Combined Ins. Co. of America v. Sinclair,* 584 P.2d 1034,.1042 (Wyo.1978). Assuming Duitscher negligently acted regarding the defective deck and her negligence proximately caused the injury, her negligent act must have been within the scope of employment to hold NCEA liable.

In *Miller v. Reiman–Wuerth Co.,* 598 P.2d 20 (Wyo.1979), we said conduct of an employee is within the scope of employment only if it is of the kind he is employed to perform; it occurs substantially within the authorized time and space limits; and it is actuated, at least in part, by a purpose to serve the master. *Miller,* 598 P.2d at 22, quoting § 228 of the RESTATEMENT (SECOND) OF AGENCY (1958). Hamiltons assert a jury might determine Duitscher was acting to benefit her employer based upon the discussion at an NCEA meeting about a party, Duitscher's addressing written invitations to NCEA board members, and Duitscher's listing of her office telephone number on the invitation. Hamiltons claim this issue is a question of fact for the jury.

■ The determination of the definition of scope of employment or the standard under which it is ascertained is a question of law for the court. *Miller,* 598 P.2d at 23. Generally, the determination as to whether or not one is acting within the scope of employment is a question of fact for the jury, but it becomes a question of law when but one reasonable inference can be drawn. *Miller,* 598 P.2d at 23.

■ NCEA's specific evidence that Duitscher had no intention other than personal is not disputed by the Hamiltons' evidence of tenuous connections to NCEA. Nebulous connections do not raise an issue of fact as to whether Duitscher's actions were in any way motivated by a purpose to serve her employer. The only legal conclusion to be drawn from the undisputed facts is that Duitscher's actions were solely personal and, therefore, outside the definition of the scope of employment.

#### 2. Apparent Agency Rule

In *Sharsmith v. Hill,* 764 P.2d 667 (Wyo. 1988), this court held that application of the apparent agency rule was appropriate in a negligence action to impose vicarious liability against a hospital. *Sharsmith,* 764 P.2d at 672. The Hamiltons claim apparent agency also imposes vicarious liability against NCEA in this negligence action. NCEA does not oppose this extension of *Sharsmith,* but asserts the apparent agency rule does not ap-

ply to this case because action on the part of the principal is required and there was none in this case.

*Sharsmith* approved § 267 of the RESTATE-MENT (SECOND) OF AGENCY (1958) which states:

> "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

*Sharsmith,* 764 P.2d at 672.

A legal entity such as NCEA can act only through its agents, and when its agents act within the scope of their authority, their actions are the actions of the organization. *See Mauch v. Kissling,* 56 Wash.App. 312, 783 P.2d 601, 604 (1989). An agent may possess actual or apparent authority and either type of authority may serve to bind the principal, but there must be evidence the principal had knowledge of the act which was being committed by its agent. *See Cargill, Inc. v. Mountain Cement Company,* 891 P.2d 57, 62 (Wyo.1995)

Whether an agency relationship exists and the scope of the agent's authority are questions of fact. *Cargill,* 891 P.2d at 62. If evidence is not presented creating a question of fact, then determinations are made as a matter of law. *See Mauch,* 783 P.2d at 605.

In *Cargill,* this court defined a test for traditional apparent agency, which closely followed § 27 of the AGENCY RESTATEMENTS.1 RESTATEMENT (SECOND) OF AGENCY § 267 is a special rule, however, which requires actual reliance upon the representations of the prin-

cipal by the person injured. Such a causal relationship and such a change of position are the essence of estoppel to deny agency. *Jackson v. Power,* 743 P.2d 1376, 1380–81 (Alaska 1987). All of the Hamiltons' arguments state that, given Duitscher's position and actions, it was reasonable for them to believe NCEA was sponsoring the function. However, the conduct in question which causes reliance must be NCEA's, not Duitscher's or Hamilton's. As already discussed, NCEA made no representations which could have caused reliance by the Hamiltons.

The Hamiltons provide authority that each of the following factors can serve as a representation by a principal that apparent agency exists:

1) the acts are of a high level corporate official; or

2) the continuity of an agent's acts make it reasonable to infer authority; or

3) the principal subsequently acquiesces in the actions of the agent.

However, under *Sharsmith,* these factors cannot be considered absent evidence that the principal manifested consent to the exercise of authority or has knowingly permitted the agent to exercise such authority. There is no evidence in this case NCEA consented to or permitted Duitscher to represent to anyone the party was an NCEA function. The evidence reveals only that Duitscher acted with her friend alone in planning, organizing, and having a private party, without any participation in any way by any other member of NCEA. Duitscher did not have the apparent authority to extend liability to NCEA for the accident. *See Sharsmith,* 764 P.2d at 672.

---

1. In *Cargill,* this court held that apparent authority will be determined according to a two-prong test which closely correlates with RESTATEMENT (SECOND) OF AGENCY § 27:

> To recover on [the apparent authority theory] the third party must establish two facts: (1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question ... and (2) the third party reasonably relied on the representations of the agent.

*Cargill,* 891 P.2d at 62, *quoting Herbert Const. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993–94 (2nd Cir.1991) (citations omitted).

RESTATEMENT (SECOND) OF AGENCY § 27 (1958) states:

> ... apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

### 3. Enterprise Liability.

The Hamiltons contend their belief the party was an NCEA function warrants application of the enterprise liability theory and they recommend this court adopt the rule that an enterprise should be held liable if the enterprise impacts society and the negligent act occurred during an activity performed for the benefit or in the interest of the enterprise. In reply, NCEA contends the theory is an extension of respondeat superior carried to an extreme degree which is generally rejected in judicial opinions for policy reasons.

The rationale for the enterprise liability theory was explained in *Sandman v. Hagan,* 261 Iowa 560, 154 N.W.2d 113 (1967):

> [T]he so-called modern trend [is] to find liability in this class of cases on the basis that such wrongs are committed by the employee only because of the employment situation, and that since the employer has the benefit of the enterprise as between two innocent third parties, he is better able to bear the risk of loss. If he cannot altogether avoid such wrongs, he can at least minimize them. In those cases it is argued that a general sense of fairness requires that the employer, as the person interested and benefitted by the business, rather than the persons who have no concern in or control over it, should bear the burden of such wrongs as incidental to such business.

*Sandman,* 154 N.W.2d at 118–19.

Courts generally "decline to impose a rule, the ramifications of which would be far-reaching and which would rearrange, across the state, the responsibility of employers for the conduct of their employees. Such a redirection of social policy is, more appropriately, the function of the legislature." *Kuehn v. White,* 24 Wash.App. 274, 600 P.2d 679, 683 (1979). We agree with this rationale and reject the theory of enterprise liability.

### CONCLUSION

The district court correctly determined no genuine issues of material fact existed on issues of direct or vicarious liability and summary judgment was appropriate as a matter of law.

Affirmed.