HILL, Justice.
[¶ 1] On January 21, 2004, David Ibarra-Viernes fell asleep while operating his motor vehicle on U.S. Highway 189.. The vehicle crossed the center line and collided with another vehicle, killing Richard Black (decedent). Peggy Ann Cook Black (Black), individually and as personal representative of the estate of her late husband filed a wrongful death action against Ibarra-Viernes’s employer, William Insulation Company, Inc. (WIC), alleging that it negligently required Ibarra-Viernes to commute long distances and work long hours without providing proper training or safeguards, breaching a duty to the public to prevent its employees from traveling to or from work when exhausted and tired. The district court granted WIC’s motion for summary judgment concluding that there was no duty owed by WIC to the decedent under the circumstances. We agree and affirm.
ISSUES
[¶ 2] Black sets out two issues on appeal:
1. Did the trial court err in failing to recognize a duty of care from an employer to innocent third parties who are injured, or in this ease, killed by its employees who are exhausted due to ■ the working conditions imposed by the employer and thus fall asleep at the wheel[?]
2. Did the trial court err in granting summary judgment and summarily dismissing Appellant’s negligent misrepresentation claim[?]
WIC responds with the following statement: Whether the District Court correctly granted summary judgment to the defendant/employer when it found that Wyoming law does not, and should not, impose a legal duty of reasonable care on Wyoming employers .to. protect the motoring public from the negligence of their off-duty employees when those off-duty employees drive to-and-from their Wyoming work-sites in their personal vehicles outside the scope of their employment.
FACTS
[¶ 3] In 2003, WIC was hired as a subcontractor on an expansion project (the project) at the Exxon/LaBarge Shute Creek Plant (the Plant). The Plant is located, in a remote area of southwest Wyoming approximately twenty-six and forty miles from the nearest population centers, Green River and Kem-merer respectively. Given the remoteness of the worksite, WIC provided a thirty dollar per day subsistence pay to each of its employees to defer part of the cost of a motel room or apartment in Green River or Kem-merer. WIC.did not require its employees to spend the money on lodgings. The employees were free to spend it (or not) as they *126 deemed fit. Another alternative was provided by The Industrial Company (TIC), the general contractor on the project. TIC arranged for buses to transport its employees daily to and from Evanston, Green River, and Kemmerer and the Plant. The buses were made available by TIC to the employees of its subcontractors; however, WIC’s project manager erroneously informed his employees that they could not ride the buses because there was only room for TIC’s employees.[1]
[¶ 4] Ibarra-Viernes was hired by WIC in the fall of 2003 and by January of 2004, he was working on the project.[2] Ibar-ra-Viernes received the thirty dollars a day subsistence pay from WIC but he elected to make the commute from his home in Evans-ton, Wyoming, to the plant, which was ninety miles away. Ibarra-Viernes carpooled with a group of co-workers, who took turns driving. Ibarra-Viernes’s work schedule was Monday through Friday, 7 a.m. to 5:30 p.m. with a half hour lunch and no, or minimal, breaks. In addition to his employment with WIC, Ibarra-Viernes worked a second job at night washing dishes at a restaurant.[3]
[¶ 5] Ibarra-Viernes completed his regular shift on Tuesday, January 20, 2004; and returned to Evanston at 8:30 p.m. He then worked his second job before going to bed around 11:00 p.m. Ibarra-Viernes rose at 4:00 a.m. to get his vehicle and collect his coworkers for the daily commute to the Plant where he worked his normal shift. The carpool, with Ibarra-Viernes driving, left the Plant around 6:00 p.m. Shortly thereafter near milepost 25 on U.S. Highway 189, Ibar-ra-Viernes’s vehicle crossed the centerline and collided head-on with a vehicle in which Black’s decedent was a passenger.
[¶ 6] On December 7, 2004, Black filed a wrongful death action in the district court against WIC. She alleged that WIC owed a duty of care to other travelers on the highway to prevent injury caused by employees who had become exhausted after being required to commute long distances and work long hours. Black claimed that WIC breached that duty and was negligent by, among other things, “failing to take precautionary measures to prevent employees from becoming so exhausted that they pose a threat of harm to the traveling public and failing to provide alternative transportation to its exhausted employees or in the alternative, failing to provide living quarters to its employees within a reasonable distance from the plant site.” WIC filed a motion for summary judgment. After a hearing, the district court granted thé motion concluding that WIC did not owe a duty to the decedent. Black appeals that determination.
STANDARD OF REVIEW
[¶ 7] When we review the granting of a summary judgment, we employ the same standards and use the same materials as were employed and used by the trial court. We examine the record from the vantage point most favorable to the party who opposed the motion, and we *127 give that party the benefit of all favorable inferences that may fairly be drawn from the record. Summary judgment is appropriate only when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the trial court’s ruling.
Burnett v. Imerys Marble, Inc., 2005 WY 82, ¶ 10, 116 P.3d 460, 462 (Wyo.2005) (quoting Act I, LLC v. Davis, 2002 WY 183, ¶ 9, 60 P.3d 145,148 (Wyo.2002)).
DISCUSSION
[¶ 8] We recently set out in detail the analytical framework for determining whether a duty exists:
“Whether a legal duty exists is a question of a law, and absent a duty, there is no liability.” Bevan v. Fix, 2002 WY 43, ¶ 46, 42 P.3d 1013, 1027 (Wyo.2002) (quoting Bowen v. Smith, 838 P.2d 186, 198 (Wyo.1992) (Brown, J., concurring)).
“ ‘ “Duty” is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.’ ” [Andersen v. Two Dot Ranch, Inc., 2002 WY 105, ¶ 44, 49 P.3d 1011, 1024 (Wyo.2002) (quoting Gates v. Richardson, 719 P.2d 193, 195 (Wyo.1986)).] * * * A duty may arise by contract, statute, common law, “or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff.” Hamilton v. Natrona County Educ. Ass’n, 901 P.2d 381, 384 (Wyo.1995). The legal question to be answered by the court is
“ ‘ “whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other — or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court.”
Thomas By Thomas v. South Cheyenne Wafer and Sewer Dist., 702 P.2d 1303, 1307 (Wyo.1985) (quoting Prosser, Law of Torts, § 37 at 206 (4th ed.1971) and Caterpillar Tractor Co. v. Donahue, 674 P.2d 1276, 1280 (Wyo.1983)).
In deciding whether to adopt a particular tort duty, a court’s focus must be much broader than just the case at hand:
“[T]he courts have merely ‘reacted to the situation in the way in which the great mass of mankind customarily react,’ and that as our ideas of human relations change the law as to duties changes with them. Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.” Prosser & Keaton on Torts, § 53, pp. 357-359 (5th ed.1984).
“ * * * jU(jge’s function in a duty determination involves complex considerations of legal and social policies which will directly affect the essential determination of the limits to government protection. Consequently, * * * the imposition and scope of a legal duty is dependent not only on the factor of foreseeability ([Cunis v. Brennan ] 56 Ill.2d 372, 375, 308 N.E.2d 617) but involves other considerations, including the magnitude of the risk involved in defendant’s conduct, the burden of re *128 quiring defendant to guard against that risk, and the consequences of placing that burden upon the defendant. [Citations.]” Nelson by Tatum v. Commonwealth Edison Company, 124 Ill.App.3d 655, 662, 80 Ill.Dec. 401, 465 N.E.2d 513, 519 (1984).
Mostert v. CBL & Assoc., 741 P.2d 1090, 1093 (Wyo.1987). In Gates, 719 P.2d at 196, we further detailed the factors to be considered:
Some of the key policy factors to be considered are: (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant’s conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant’s conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved. Tarasoff v. Regents of University of California, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342, 83 A.L.R.3d 1166 (1976).
Killian v. Caza Drilling, Inc., 2006 WY 42, ¶ 8, 131 P.3d 975, 979-80 (Wyo.2006) (quoting Borns ex rel. Gannon v. Voss, 2003 WY 74, ¶¶ 30-31, 70 P.3d 362, 273-74 (Wyo.2003)).
[¶ 9] Before we can proceed to our analysis, we-must identify the nature of the duty that Black seeks to impose on WIC. Black insists that she is not seeking to impose a duty through vicarious liability or to establish a broad duty of care for an employer to control an off-duty employee’s conduct. Instead, she argues that an employer has an obligation to ensure that the conditions of employment do not cause an employee to become fatigued and, to the extent that they do, the employer has a duty to take reasonable actions to protect the traveling public from the foreseeable consequences of those employees traveling from their worksite.
[¶ 10] Essentially, the question of duty that we must determine in this case is whether WIC’s actions and/or inactions prior to the accident created a foreseeable risk of harm that the employer had a duty to guard against. In other words: whether or not Ibarra-Viernes’s fatigue arose out of, and in the course of, his employment. See Van Devander v. Heller Electric Co., Inc., 405 F.2d 1108, 1109 (D.C.Cir.1968); Gene P. Bowen, Note: Wherein Lies the Duty? Determining Employer Liability for the Actions of Fatigued Employees Commuting From Work, 42 Wayne L.Rev.2091, 2109-10 (1996).
[¶ 11] We turn to the first Gates factor: The foreseeability of harm to the plaintiff. We recently stated that this factor is essentially a consideration of proximate cause:
Proximate cause is explained as “the accident or injury must be the natural and probable consequence of the act of negligence.” Bettencourt v. Pride Well Service, Inc., 735 P.2d 722, 726 (Wyo.1987); followed in, Natural Gas Processing Co. v. Hull, 886 P.2d 1181, 1186 (Wyo.1994); Lynch v. Norton Const., Inc., 861 P.2d 1095, 1099 (Wyo.1993). The ultimate test of proximate cause is foreseeability of injury. Stephenson v. Pacific Power & Light Co., 779 P.2d 1169, 1178 (Wyo.1989); McClellan v. Tottenhoff, 666 P.2d 408, 414 (Wyo.1983). In order to qualify as a legal cause, the conduct must be a substantial factor in bringing about the plaintiffs injuries. Natural Gas Processing Co., 886 P.2d at 1186; Stephenson, 779 P.2d at 1178.
Turcq v. Shanahan, 950 P.2d 47, 51 (Wyo.1997) (emphasis added). In considering the concept of proximate cause, we have noted not only what constitutes proximate cause but what does not:
In Lemos v. Madden, 28 Wyo. 1, 200 P. 791, 793 (1921), this court first defined proximate cause as “[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.” This same definition has been relied upon in recent years. Robertson v. TWP, Inc., 656 P.2d 547 (Wyo.1983); Kopriva v. Union Pacific R. Co., 592 P.2d 711 (Wyo.1979). In Lemos v. Madden, supra, 200 P. at 794, the court also rejected a “but for” rule of causation, stating: *129 “ * * * But if the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion. * * *”
In later cases our court has identified legal causation as that conduct which is a substantial factor in bringing about the injuries identified in the complaint. McClellan v. Tottenhoff, Wyo. 666 P.2d 408 (Wyo.1983); Chrysler Corporation v. Todorovich, 580 P.2d 1123 (Wyo.1978); Phelps v. Woodward Construction Co., 66 Wyo. 33, 33, 204 P.2d 179 (Wyo.1949). The obvious rationalization of that approach with the two propositions found in Lemos v. Madden, supra, is that if the conduct is “that cause which in natural and continuous sequence, unbroken by a sufficient intervening cause produces the injury, without which the result would not have occurred,” it must be identified as a substantial factor in bringing about the harm. If, however, it created only a condition or occasion for the harm to occur then it would be regarded as a remote, not a proximate, cause, and would not be a substantial factor in bringing about the harm.
An alternative method for explaining these concepts is found in the discussions of intervening cause in our eases. McClellan v. Tottenhoff, supra; Kopriva v. Union Pacific R. Co., supra; Gilliland v. Rhoads, 539 P.2d 1221 (Wyo.1975); Fagan v. Summers, 498 P.2d 1227 (Wyo.1972); and Tyler v. Jensen, 75 Wyo. 249, 295 P.2d 742 (Wyo.1956). An intervening cause is one that comes into being after a defendant’s negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability. It is reasonably foreseeable if it is a probable consequence of the defendant’s wrongful act or is a normal response to the stimulus of the situation created thereby.
Buckley v. Bell, 703 P.2d 1089, 1091-92 (Wyo.1985).
Killian, ¶ 20,131 P.3d at 985.
[¶ 12] The question then is whether or not WIC’s conduct was a substantial factor in bringing about the death of the decedent. Or more precisely, a showing of causation necessitates a showing that Ibarra-Viernes’s work was a substantial contributing factor to his fatigue. Bowen, 42 Wayne L.Rev., supra, at 2108, n. 73. This means that for an “employer to be liable for the actions of a fatigued employee on a theory of negligence, the fatigue must arise out of and in the course of employment ... [because] ... [t]o hold otherwise would charge an employer with knowledge of circumstances beyond his control.” Id. at 2109. Naturally then, the scope of an' employer’s duty is “bound by activity that the employer can actually control within the employment relationship.” Id.
[¶ 13] Black contends that the accident was a foreseeable consequence of WIC’s conduct. Specifically, she claims that it was foreseeable that the large influx of workers into the remote, rural area where the Plant was located would cause traffic problems and that despite being aware of this, WIC required its employees to work long hours and make long commutes. She argues that workers who were commuting and working twelve to fourteen hours a day would not have sufficient time in the day to take care of life activities and still get sufficient sleep. Given these conditions, Black contends that without employer supplied alternatives such as bus transport, it was foreseeable that sleep deprived workers would likely fall asleep and cause injury to other travelers on the roads.
[¶ 14] We begin by noting that we are puzzled by Black’s emphasis on the apparent traffic problems created by the influx of workers into the area by the project. Black stresses throughout her brief the dangerous conditions the increased traffic created on the rural roads surrounding the Plant. After noting that WIC’s President acknowledged the traffic problems, Black states what follows in the portion of her brief addressing this Gates factor:
Likewise, TIC witnesses acknowledged that traffic problems were created when workers were rushing to get home because they had little time in the day for any *130 other activities. TIC provided the bus as a “safety precaution” because of all the above factors, but due to [WIC’s] refusal to allow David Ibarra and his coworkers to use that safety precaution, two people are dead and five were seriously injured. When the consequence of an act or omission is “predictable and severe”, this factor weighs in favor of establishment of a duty of care. In this case the fatal crash was predictable and foreseeable.
Black defined the issue before us as whether or not there was “a duty of care from an employer to innocent third parties who are injured, or in this case, killed by its employees who are exhausted due to the working conditions imposed by the employer and thus fall asleep at the wheel.” Our puzzlement is derived from an inability to determine the relevance of the alleged traffic problems on the roads around the project and that workers “rushed to get home” with the contention that the accident was caused by the employee falling asleep at the wheel of his vehicle due to his working conditions. There is no evidence, in the record that Ibarra-Viernes was driving in an unsafe or reckless manner in a “rush to get home.” There is no evidence that any condition of the road or of the traffic caused or contributed to this accident. All that the evidence shows is that Ibarra-Viernes was fatigued and he fell asleep while driving, causing his vehicle to cross the cen-terline into oncoming traffic. There is perhaps an inference that the increased traffic affected the length of Ibarra-Viernes’s commute, contributing to his fatigue, but Black does not make that argument and there is no supporting evidence in the record. We decline to speculate in that direction. Since we are concerned with the factors that caused or contributed to Ibarra-Viernes’s fatigue, we will confine our analysis to those facts relevant to that consideration, and to the extent that Black’s argument is predicated on irrelevancies, we will not consider it.
[¶ 15] The most obvious factor within the employer’s control that could cause fatigue in an employee is the number of hours the employee is required to work. On the day of the accident and those preceding it, Ibarra-Viernes worked his normal shift of ten hours. A ten-hour shift within a twenty-four-hour period is not, on its face, an objectively unreasonable period of work when compared with those situations where an employer was held liable for the damages caused by a fatigued employee driving home from work. Compare Robertson v. LeMaster, 171 W.Va. 607, 301 S.E.2d 563, 568-69 (1983) (employee required to work thirty-two consecutive hours) and Faverty v. McDonald’s Restaurants of Oregon, Inc., 133 Or.App. 514, 892 P.2d 703, 705 (1995) (eighteen-year-old employee worked twelve and a half hours in a seventeen-hour périod). Crucially, in both of those cases, the employer had actual knowledge of their employee’s fatigued state. Id. There is no evidence that WIC had notice that Ibarra-Viernes was fatigued on the day of the accident.
[¶ 16] Black seeks to expand Ibarra-Viernes’s hours of work to include the time of his commute claiming that WIC “required” him to make the lengthy drive to and from the Plant citing WIC’s refusal to allow its employees to ride the buses provided by TIC. First, Black cites no authority for the proposition that WIC was required to provide its employees with alternatives, such as busing, to commuting. See Bowen, 42 Wayne L.Rev., supra, at 2112-13 (noting that no court has held that an employer is under an affirmative duty to institute policies to guard against fatigue in the workplace though commenting that to the extent such policies are adopted, they may mitigate a determination that a breach of duty has occurred). Furthermore, WIC did, in fact, provide an alternative to long distance commuting for its employees: WIC provided its employees, including Ibarra-Viernes, with a daily thirty dollar subsistence payment to partially offset the cost of taking lodging closer to the worksite. Ibarra-Viernes, however, elected to pocket that money and commute every day from his home in Evanston. That was a voluntary choice made by Ibarra-Viernes.
[¶ 17] In making her argument, Black fails to address a significant factor: Ibarra-Viernes’s decision to work a second job. After returning to Evanston upon completion of his work day for WIC, Ibarra-Viernes would go to a second job at a restaurant. On the *131 night before the accident, Ibarra-Viernes stated that he returned home about 8:30 p.m. and then went to work his second job. Ibar-ra-Viernes said he got to bed around 11:00 p.m. that night. Certainly, the second job had an affect on Ibarra-Viernes’s ability to get rest, if not actual sleep. Ibarra-Viernes admitted that he normally got only about five to six hours of sleep a night. Nevertheless, Black neglects to discuss the consequences of the second job in her brief. Her failure to do so seriously undermines her argument.
[¶ 18] In Depew v. Crocodile Enterprises, Inc., 63 Cal.App.4th 480, 73 Cal.Rptr.2d 673 (Cal.App.1998), the employee worked a seventeen and a half hour shift, had sixteen hours off, and then fell asleep on the way home after working a six-hour shift. The court explained that the employee was responsible for managing his time off work:
Indeed, in light of [the employee’s] 16-hour break between shifts, he “should be charged with the ability to manage his time in accord with the nature of his job... .The employer had every reason to assume that the employee, upon reporting to work, had received sufficient rest in the previous [16] hours, just as an employer whose employees report to work on Monday morning has every right to assume that those employees received sufficient rest over the weekend.” (Note, Wherein Lies the Duty? Determining Employer Liability for the Actions of Fatigued Employees Commuting From Work (1994) 42 Wayne L.Rev.2091, 2098-99, fn. 31.) To the extent [the employee] was too tired to drive home -without causing a fatal crash, his condition was neither an “outgrowth” of his employment nor “ ‘ “inherent in the working environment.” ’ ” [Citation omitted.]
Depew, 73 Cal.Rptr.2d at 679. Ibarra-Viernes had thirteen and a half hours between shifts during the work week. The burden was on him to manage his own time to ensure that he was capable of performing his job. Ibarra-Viernes elected to expend a significant portion of his time making a lengthy commute and working a second job. These were voluntary decisions made by Ibarra-Viernes for which he is responsible. Under these circumstances, it cannot be said that his employment was the substantial factor in contributing to Ibarra-Viernes’s fatigue.
[¶ 19] We conclude that decedent’s injuries were not the “natural and probable consequence of’ any acts of negligence by WIC in the course of Ibarra-Viernes’s employment; rather, the decisions and conduct of Ibarra-Viernes were the substantial factor that brought about the injuries. Since the harm to Black’s decedent was not a foreseeable consequence of WIC’s actions (or inac-tions), we decline to impose a duty under the circumstances. Given this conclusion, the remaining Gates factors are not persuasive, and we decline to discuss them.
[8,9] [¶ 20] There remain two additional issues that we will briefly discuss. First, Black suggests that the Industrial Development Information and Siting Act, Wyo. Stat. Ann. §§ 35-12-101 through 35-12-119, may provide a basis for finding a duty of care on the part of WIC or, at a minimum, satisfy the Gates factor of finding a “policy of preventing future harm” in favor of imposing a duty. Black’s argument is moot insofar as it relates to the Gates factors given our finding on foreseeability. As for the claim that the Act could be an independent basis for imposing a duty, Black has failed to provide a cogent argument. Her brief does not contain a statement of the issue setting forth this claim. W.R.A.P. 7.01(d). The Act is cited once in Black’s main brief and no analysis of the Act’s language within the context of this case is provided. She does present some semblance of an analysis in her reply brief. However, the reply brief is not the proper forum for that argument. A reply brief is intended “to allow the appellants the opportunity to address issues and arguments raised by the appellees.” RT Communications, Inc. v. State Board of Equalization, 11 P.3d 915, 927 (Wyo.2000). Given the lack of cogent argument, we decline to consider the matter.
[¶ 21] Finally, Black contends that the district court erred in dismissing a *132 negligent misrepresentation claim.[4] Her claim is that even if there was no duty of care, WIC might be liable for the negligent misrepresentation made by WIC’s project manager when he informed WIC’s employees that they could not ride the TIC buses. This claim is not properly before us. We said recently:
This distinction is important in the instant case because, although the Birts briefed and argued non-disclosure in their appeal, they did not allege it in their complaint nor was it ruled upon by the district court. Consequently, non-disclosure as a separate tort is not properly before this Court.
Birt v. Wells Fargo Home Mortgage, Inc., 2003 WY 102, ¶ 43, 75 P.3d 640, 657 (Wyo.2003). Black did not plead negligent misrepresentation, and the district court did not rule on such a claim. She contends that the claim is sufficiently implicit in her complaint to have given notice of it. That may be; however, there is nothing in the record establishing that the claim was made to the district court. We generally will not consider issues raised for the first time on appeal. Yates v. Yates, 2003 WY 161, ¶¶ 18-20, 81 P.3d 184, 190 (Wyo.2003). We decline to do so here.
CONCLUSION
[¶ 22] Under the circumstances of this case, the defendant employer did not owe a duty to the plaintiffs decedent. The district court order granting the defendant summary judgment is affirmed.

.The parties bitterly dispute this point. Black cites deposition testimony. from the president of TIC, who stated that subcontractor employees could ride the buses and that he did not know of any reason why WIC employees could not, and statements from Ibarra-Viernes that he was not allowed to ride on the buses. In contrast, WIC . cites two affidavits: (1) from TIC’s subcontract superintendent on the project who states that he informed WIC's project manager that "WIC employees could not ride the buses that TIC had arranged for its employees" and that he was authorized by TIC to convey that information to WIC; and (2) from TIC’s subcontract coordinator on the project who averred that he was present when WIC was informed that its employees could not ride the TIC buses. For purposes of summary judgment, the district court presumed that the evidence cited by Black, as the party opposing the motion, was true. For purposes of this appeal, we do likewise.

. In her brief, Black stresses that Ibarra-Viernes was not legally in the country. Black asserts that WIC had a practice of hiring illegal aliens and cites this as a factor in imposing a duty. Black has not asserted a claim of negligent hiring, see Cranston v. Weston County Weed and Pest Board, 826 P.2d 251, 258 (Wyo.1992), and she cites no evidence (nor could we find any) supporting any allegation that Ibarra-Viernes's residential status was a causative factor in the accident. Accordingly, Ibarra-Viernes's residential status is not relevant to our duty inquiry, and it plays no part in our analysis.

. WIC had no knowledge of Ibarra-Viernes’s other employment.

. Black asserted in her main brief that a claim for negligent misrepresentation had been raised before the district court. No citation to the record was provided in support of that assertion. We were unable to find any reference to such a claim in the record before us. It is not the duty of this Court to scour the record to find confirmation of party assertions; it is the duty of the proponent to support their position with proper citation to the record. W.R.A.P. 7.01.